ACCEPTED
15-25-00142-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/25/2025 10:03 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/25/2025 10:03:36 PM
CHRISTOPHER A. PRINE
Clerk

CAUSE NO. 15-25-00142-CV

IN THE FIFTEENTH COURT OF APPEALS AUSTIN, TEXAS

ROBERT EDWARD BATTAILE, Appellant/Relator

v.

SECRETARY OF STATE, JANE NELSON, AND TRAVIS COUNTY

COMMISSIONER, JEFFREY TRAVILLION,

Appellees/Respondents

**APPELLANT'S SUPPLEMENTAL LETTER BRIEF**

**Ultra Vires Annexation (Ordinance No. 774), Failure of Vested Rights Under Tex. Loc. Gov't Code § 43.002(a)(2), Systemic Due-Process Violations, and Structural Separation-of-Powers Defects in the City of Manor; Errata and Related Items**

TO THE HONORABLE JUSTICES OF THE FIFTEENTH COURT OF APPEALS:

Appellant/Relator Robert Edward Battaile, appearing pro se, respectfully submits this Supplemental Filing containing newly developed evidence, structural analysis, and preserved statutory arguments relevant to the above-referenced cause. This Letter Brief supplements the previously filed Appellate Brief on the Merits and Original Petition for

Writ of Mandamus and is intended to assist the Court in understanding the continuing pattern of ultra vires conduct, systemic due-process failures, and structural defects in the City of Manor's governance.

**TABLE OF CONTENTS** **Page**

**SECTION 1 — NEWLY DISCOVERED CONTINUING MISCONDUCT** ............6

A. 11/16/2025 Unrecorded Unlawful Charter Review Commission Meetings (Exhibit A) ................................................................................................6

B. 11/13/2025 City Secretary Interference With Public Access Charter Review Commission & Misbehavior (Exhibit C) ................................................................6

C. 10/21/2025 and 10/27/2025 Selective Enforcement and Failure to Enforce Against Staff (Exhibits D–E) ................................................................................7

D. 11/03/2025 Disorderly Conduct by Senior City Staff ....................................8

E. 10/27/2025 TOMA Violations – Secret CRC Meetings (Exhibit G) ...........8

F. 11/17/2025 Interference With Recording and Public Information Rights (Complaints 11172025-01 & -02 — Exhibits J & K) ........................................9

G. 11/16/2025 Failure to Convene the Ethics Commission (Exhibit I) ...........10

H. 11/21/2025 Continued Interference With Audio Recording (Exhibit L) ...................11

I. 11/21/2025 Suppression of Public-Speaking Rights (Exhibit M) ...............................11

**SECTION 2 — STRUCTURAL CONSTITUTIONAL DEFECTS IN**

**MUNICIPAL GOVERNANCE** .......................................................................................11

A. Citizens Are Structurally Excluded From Governance ............................................... 11

B. Mayor and City Council Wield Power Without Accountability ................................12

C. Judicial Functions Subordinated to the Finance Department ....................................12

D. Charter Review Commission Is Staff-Controlled, Not Independent …......................13

E. Ethics Commission Is Nonfunctional by Design ........................................................14

F. City Attorneys Are Structurally Conflicted ..................................................................14

G. Statewide Implications and Need for Structural Remedies .........................................15

**SECTION 3 — DALFEN / MANOR DOWNS ANNEXATION AND**

**VESTING DEFECTS** ........................................................................................................16

(See EXHIBIT B.1. Austin CETJ-2024-0001 Report (Vesting / ETJ) …........46

Photos EXHIBIT B.2. …..............pg 42

   Plus photos in Mandamus Supplemental – See also ERRATA NO. 2 — pg 26

A. Statutory Prerequisites .................................................................................................17

B. Missing Completed Application ................................................................17

C. No Vested Rights ..........................................................................................18

D. Ultra Vires Action .......................................................................................18

E. Inconsistent Prior Use .................................................................................19

F. Legal Consequences .....................................................................................19

**SECTION 4 — MUNICIPAL COMPLAINTS DEMONSTRATING SYSTEMIC SELECTIVE ENFORCEMENT, RETALIATION, AND CITYWIDE BREAKDOWN OF LAWFUL PROCESS** ............................................................20

**SECTION 5 — PRESERVATION OF APPELLATE ISSUES** ..............................23

A. Completeness of the Transferred Record ..................................................23

B. Context Regarding Public Statements About the Fifteenth Court of Appeals ...........23

**SECTION 6 — ERRATA**

Errata 1. – Monarch Ranch developers left off list of Defendants by Appellant and owes several hundred thousand dollar of In-Leu Parkland Fees................................24

Errata 2. – Manor Downs incorrect filed de-annexation information clarified by SB2038 process and other documentation................................26

**PRAYER** ................................................................................................27

**CERTIFICATE OF SERVICE** ................................................................................29

**CERTIFICATE OF COMPLIANCE** .....................................................................29

**EXHIBITS** ..............................................................................................................30

**SECTION 1 — NEWLY DISCOVERED OR CONTINUING MISCONDUCT**

**A. Unrecorded and Unlawful Charter Review Commission Meetings** (Exhibit A)

Appellant submits Exhibit A pg 31  (Ethics Commission Complaint, filed November 16, 2025) as newly developed evidence demonstrating a continuing, deliberate pattern of municipal secrecy and staff harassment. As detailed in Exhibit A, the City of Manor conducted four consecutive Charter Review Commission ("CRC") meetings without any livestream, audio, video, minutes, or archival record, despite fully functional AV infrastructure used routinely for other public meetings.

This omission is not clerical; it is policy-level suppression of public access, violating the Texas Constitution, the Texas Open Meetings Act, the City's Ethics Code, and the City's Personnel Manual. Commissioners admitted they could not recall prior actions because no minutes, no recording, and no record of any kind existed. The conduct described in Exhibit A—including a direct, public act of disparagement by the City Secretary—shows ongoing retaliation and obstruction relevant to this appeal.

**B. City Secretary Harassment and Interference With Public Access**

During the November 13, 2025 CRC meeting, Appellant lawfully requested an audio-out feed from the PA system so that proceedings could be recorded without disruption.

Before the responding staff member could even answer, City Secretary Lluvia Almaraz crossed the room, escalated the encounter, and stated mockingly: "You're NOT a newspaper." Multiple witnesses were present.

This behavior violated TOMA § 551.023 and satisfies elements of attempted Official Oppression, because it intentionally interfered with Appellant's statutory right to non-disruptive recording of a public meeting. The setting makes the misconduct more grave: the City was in the process of rewriting its own Charter. (Exhibit C)

**C. Selective Enforcement and Failure to Enforce Against Staff**

**1.Citizen Complaint 11072025 – TC 545.303(b) Parking Violations (Exhibit D)**

On October 21, two City Public Works vehicles were photographed parked directly beneath posted "NO PARKING" signs. The violation is strict-liability under the Transportation Code. Evidence is indisputable. Yet no citation was issued, no independent prosecutor was appointed, and the City Attorney—who represents the violators—took no action. Manor PD likewise took no action.

**2.Citizen Complaint 10272025-01 – PC 39.02(b)(1) Abuse of Official Capacity (Exhibit D and E)**

Related to the same October 21 parking violations, this complaint alleges Abuse

of Official Capacity. Again: no action, no review, no accountability.

Systemic meaning: ordinances enforced against residents are quietly ignored when City employees are the violators. Equal protection is effectively dead on arrival.

**D. Disorderly Conduct by Senior City Staff (Exhibit D)**

Citizen Complaint 11032025 – PC 42.01(a)(4), (8) (Disorderly Conduct) documents an encounter in which City Manager Scott Moore and City Secretary Almaraz engaged in behavior meeting multiple statutory elements of Disorderly Conduct: raised voices, aggressive posture, physical approach toward Appellant, and mocking, escalating remarks. The incident is captured on video and violates multiple provisions of the City Personnel Manual.

Despite clear evidence, neither Manor PD nor the City Attorney initiated any action. A prior ethics complaint regarding similar conduct, filed more than a year earlier, was also ignored.

Systemic meaning: When Appellant commits no violation, he is punished. When staff commit documented violations, the enforcement system becomes inert. This disparity evidences selective enforcement and retaliation rather than neutral application of law.

**E. TOMA Violations – Secret CRC Meetings (Exhibit G)**

Citizen Complaint 10272025-02 – TOMA Violations shows that by November 13, 2025, the CRC had conducted four consecutive meetings with:

•No livestream

•No audio

•No video

•No minutes

•No public record or archive of any kind

Commissioners themselves acknowledged that they could not recall earlier actions because the City produced no record.

Systemic meaning: The City eliminated public oversight at precisely the moment when legal oversight was most required—during a comprehensive Charter rewrite. This is not accident; it is an engineered blackout.

**F. Interference With Recording and Public Information Rights**

(Complaints 11172025-01 & -02 — Exhibits J & K)

Morning — IT Denial of Audio Access (Exhibit J)

On November 17, 2025, Appellant requested a simple audio-out feed from the Council Chambers sound board. IT Director Phil Green refused: "We don't do that in

Manor," and incorrectly claimed the connection would "tap into the network." He acted without consulting legal counsel and contrary to TOMA § 551.023.

Late Morning — Police Denial of Public Information Act Rights (Exhibit K)

Later the same day, Manor PD staff refused to provide Appellant's own report result in person, insisting that requests "must be made online," contrary to Government Code § 552.221. This encounter was audio-recorded.

Systemic meaning: Two departments—IT and Police—blocked two separate statutory rights (recording and PIA access) within hours of each other. This is not coincidence; it is structural suppression.

## G. Failure to Convene the Ethics Commission (Exhibit I)

Citizen Complaint 11042025 – Ethics Commission Non-Activation shows that on November 16, 2025 Appellant submitted an Ethics Complaint detailing secret CRC meetings, staff hostility, and multiple Ethics Code violations. Manor Code § 12.02.041 requires the City Manager to convene the Ethics Commission upon receipt of such a complaint. No Commission was convened. A prior ethics complaint filed more than a year earlier was also ignored.

Systemic meaning: The Ethics Commission is a fiction—an empty box on an org chart

with no legal function in practice. Mandatory review never occurs. Misconduct cannot be investigated from within the City's own framework.

**H. 11/21/2025 Continued Interference With Audio Recording (Exhibit L)**

City again denies audio feed; Appellant forced to create sole public record manually.

**I. 11/21/2025 Suppression of Public-Speaking Rights (Exhibit M)**

New speaking rules cut time, limit agenda, and suppress nonprofit participation.

**SECTION 2 — STRUCTURAL CONSTITUTIONAL DEFECTS IN MUNICIPAL GOVERNANCE**

**A. Citizens Are Structurally Excluded From Governance**

On the **Organization Chart**, "Citizens of Manor" appear in a detached bubble with no lines connecting them to any department, board, commission, or official function.

•No upward supervisory path from citizens,

•No advisory line to any decision-maker,

•No participatory placement for citizens in the governance loop.

This structural exclusion is the root cause of exclusion from CRC meetings, lack of notice, lack of recordings, denial of access, staff retaliation, and Appellant's inability to

obtain basic information. The sovereigns—the people—do not appear anywhere in the actual chain of command. This offends basic constitutional norms of local government.

**B. Mayor and City Council Wield Power Without Accountability**

The chart places the Mayor and Council at the top, but their connections flow only downward and primarily into staff and the City Attorney. There is no upward accountability to citizens, no independent oversight body, and no structural counterweight.

This helps explain:

•Refusal to record meetings,

•Refusal to convene the Ethics Commission,

•Tolerance of staff retaliation,

•Denial of information, and

•Approval of contested annexations and development approvals.

This is the classic profile of concentrated power without checks.

**C. Judicial Functions Subordinated to the Finance Department** ..............

Most alarming, the Organization Chart places the Municipal Court—a judicial body— under the Finance Director violating separation-of-powers principles undermining:

•Judicial independence,

•Neutrality of the tribunal, and

•Due process of law.

When courts report to finance, the system effectively becomes a revenue arm, not a

neutral adjudicator. This structure explains:

•"**Courts of No Record**,"

•Lack of transcripts,

•Bail abuses,

•Selective prosecutions, and

•Non-enforcement of violations committed by City staff.

Appellant's own experiences are the predictable output of this unconstitutional design.

**D. Charter Review Commission Is Staff-Controlled, Not Independent**

The CRC—which rewrites the City Charter—appears on the chart as an appendage of

staff, particularly the City Secretary and City Manager, rather than as an independent

citizen body. This structure guarantees:

•Staff control of agendas,

•Staff influence over commissioners,

•Staff gatekeeping of access, and

•Unrecorded, opaque deliberations.

These design flaws directly produced the four secret CRC meetings described in Section

1.CRC is not a citizen oversight body; it is a staff-dominated shell.

**E. Ethics Commission Is Nonfunctional by Design**

The Ethics Commission appears on the chart in an isolated box, with:

•No reporting line,

•No operational authority,

•No ability to convene itself, and

•No assigned oversight.

A commission with no connections cannot function. That is precisely what has

happened: no Ethics Commission has ever been convened despite multiple complaints.

This structure makes internal accountability impossible and violates due process.

**F. City Attorneys Are Structurally Conflicted**

The chart shows the City Attorneys:

•Advising the City Manager,

•Advising the Mayor and Council,

•Advising staff during Charter Review,

•Acting as prosecutors in Municipal Court,

•Influencing Public Information Act compliance, and

•Defending the same staff who are the subject of complaints.

This is an irreconcilable conflict of interest. A single law firm cannot fairly represent the violators, the enforcers, the prosecutors, and the decision-makers at once. This structure guarantees:

•Suppression of ethics complaints,

•Selective enforcement,

•Retaliation against citizens, and

•Due-process violations like those suffered by Appellant.

**G. Statewide Implications and Need for Structural Remedies**

These governance defects are not unique to Manor. They recur across similar fast-growth, corridor cities. Under its equitable powers, this Court may consider regional rotation of prosecutors, independent judicial assignments, mandatory recording rules, neutral ethics-commission appointment mechanisms, and structural reforms to prevent political capture.

The defects undermine public trust, deny due process, and create exactly the type of systemic abuse that justifies mandamus-level relief.

**SECTION 3 — DALFEN / MANOR DOWNS ANNEXATION AND VESTING DEFECTS**

(See EXHIBIT B.1. Austin CETJ-2024-0001 Report (Vesting / ETJ) and

Photos EXHIBIT B.2. Pg 56; Plus Mandamus Supplemental

– See also ERRATA NO. 2 — pg 26

Appellant incorporates Exhibit B.1. And B.2. (City of Austin Staff Report CETJ-2024-0001 dated October 15, 2024, and attachments), Petition for Writ of Mandamus pgs previously filed in this cause, rather than re-attaching duplicative copies. That record establishes that Dalfen Industrial never satisfied the vesting requirements of Texas Local Government Code § 43.002(a)(2), because no completed application for development existed at least ninety days before annexation proceedings were instituted. Accordingly, the only legally protected use is the prior, existing use: racetrack, open-space, and event grounds. The City of Manor lacked authority to authorize demolition, mass grading, or large-scale warehouse development inconsistent with that use.

Ordinance No. 774 and its companion approvals therefore operate ultra vires.

**A. Statutory Prerequisites Under Tex. Loc. Gov't Code § 43.002(a)(2)**

Texas Local Government Code § 43.002(a)(2) provides that a landowner may carry forward a planned future use of land only if the landowner filed a completed application for development at least 90 days before annexation proceedings were instituted. If this condition is not met, no future use vests, and the municipality may not authorize development inconsistent with the prior, existing use.

Annexation proceedings for Ordinance No. 774 were initiated in January 2025, culminating in the January 15, 2025 vote. Backdating 90 days sets the statutory vesting deadline at October 17, 2024. No completed development application existed by that date.

**B. Missing Completed Application**

The record—including the City of Austin CETJ Staff Report (Exhibit B) and the developer's own presentations—shows that as of mid-October 2024:

•Parcel boundaries were still being reconfigured,

•Civil engineering plans were not submitted,

•Tree, drainage, grading, hydrological, and landscape plans were absent,

•Required Manor Code items (tree survey, heritage-tree documentation, bufferyards, cultural/historical survey) were not provided,

•The nine-acre park dedication area was not yet platted,

•The development agreement itself acknowledged that Dalfen "intends to submit" plans in the future—confirming none had been submitted.

A conceptual site plan with "Plans subject to change" is not a completed application under Texas law.

## C. No Vested Rights

Because no completed development application existed on or before the October 17 statutory deadline, no industrial or warehouse use vested under § 43.002(a)(2). Only the existing use at the time of annexation—Manor Downs racetrack, open-space, and event grounds—remains legally protected.

All post-annexation development approvals must conform to that existing use. Industrial build-out is not protected and cannot vest retroactively.

## D. Ultra Vires Action by the City of Manor

By approving demolition, mass grading, warehouse construction, and Chapter 380 incentive structures premised on unvested industrial use, the City of Manor acted ultra

vires—outside its lawful authority. A municipality cannot authorize development that state law forbids or for which no vested rights exist.

This includes (but is not limited to):

•Demolition of racetrack structures,

•Removal of historic and heritage trees (including the 29-inch pecan),

•Approval of grading permits,

•Warehouse hardscape approvals,

•Tax abatements and subsidies premised on unlawful land use.

**E. Inconsistent Prior Use**

The legally protected pre-annexation use—racetrack, event grounds, open space, creek-buffered agricultural land—is incompatible with six concrete warehouse footprints, heavy truck circulation, and removal of watershed protections.

Texas law favors continuation of the existing use until lawful vesting is established. No such vesting occurred here.

**F. Legal Consequences**

Because:

1.No completed application existed by October 17, 2024;

2.Industrial/warehouse use did not vest under § 43.002(a)(2); and

3.Annexation was adopted by an unlawfully constituted governing body,

Every subsequent action is void or voidable, including:

•Ordinance No. 774 (ultra vires annexation),

•All development approvals,

•Site demolition and tree-removal authorizations,

•All Chapter 380 subsidies tied to unvested industrial use,

•All staff and Council actions premised on the assumption of vested industrial

rights.

## SECTION 4 — MUNICIPAL COMPLAINTS DEMONSTRATING SYSTEMIC SELECTIVE ENFORCEMENT, RETALIATION, AND CITYWIDE BREAKDOWN OF LAWFUL PROCESS

Throughout Fall 2025, Appellant submitted multiple municipal complaints documenting statutory violations across different City departments. Each incident was independently witnessed, recorded, or documented, and each is attached as a separately labeled Exhibit (D through M). Individually, they show discrete statutory violations. Collectively, they

demonstrate a structural, citywide breakdown of lawful municipal process and a pattern of selective enforcement against Appellant, contrasted with protectionism and non-enforcement toward City staff.

The complaints are not speculative or rhetorical—they consist of sworn statements, timestamped photographs, audio recordings, video evidence, and mandatory-reporting failures by municipal officials. The pattern is unmistakable: violations by City insiders receive zero review, while Appellant's lawful conduct triggers hostility, retaliation, and system-wide obstruction. These incidents provide crucial context for Appellant's due-process arguments and demonstrate why structural remedies, not individual corrections, are necessary.

SECTION 4 — Municipal Complaints (Selective Enforcement & Retaliation)

1. Exhibit D — Public Works Vehicle Parking Violations at inner-city Art Park. City vehicles under "NO PARKING" signs; no citations, no review, no accountability.

2. Exhibit E — Abuse of Official Capacity. Appellant's Same Disorderly Conduct charges AGAINST City Employees Ignored by Police. City Attorney shields staff; identical violations punished only when citizens alleged to commit them.

3. Exhibit F — Disorderly Conduct by Senior Staff. After Appellant witnessed

crime of Election Coercion by City Manager and City Secretary; recorded confrontation by City Manager & Secretary ensued; evidence ignored and staff never charged.

4.Exhibit G — Secret Charter Review Commission Meetings (TOMA). Four mtgs no record, no minutes, no oversight. Appellant/Relator felt this violation so egregious that he filed a SUPPLEMENTAL to the MANDAMUS Petition on Sunday, Nov 23, 2025..

5.Exhibit H — Interference With Recording Rights. City Secretary blocks legal audio access; attempted Official Oppression.

6.Exhibit I — Ethics Commission Non-Activation. Mandatory Commission never convened despite repeated complaints.

7.Exhibit J — IT Denial of Audio Feed. Director blocks simple audio-out jack; direct violation of TOMA § 551.023.

8.Exhibit K — Police Denial of PIA Rights.

PD refuses in-person access to Appellant's own report; statute violated.

9.Exhibit L — Forced Boom-Pole Recording.

City again denies audio feed; Appellant forced to create sole public record manually.

10.Exhibit M — Suppression of Public-Speaking Rights.

New speaking rules cut time, limit agenda, and suppress nonprofit participation.

11.Exhibit N — Monarch Ranch paying no in-lieu Parkland fees despite

developer's

own siteplan not containing any "parkland" color code in the legend.

12.Exhibit O — Misuse of City funds to mow private developer's lots.

## SECTION 5 — PRESERVATION OF APPELLATE ISSUES

### A. Completeness of the Transferred Record.

For preservation only, Appellant respectfully notes that certain filings and exhibits were

not included in the initial transfer of the record from the Third Court of Appeals.

Appellant has filed a Motion to Supplement the Record to ensure completeness for any

future review. Appellant does not allege that this Court acted improperly or without full

information; this paragraph exists solely to avoid waiver if a higher court later inquires

about the timing of the record transfer.

### B. Structural Context Regarding Public Statements About Fifteenth Court of Appeals.

For preservation only, Appellant notes that public statements by political officials about

the intended purpose of the Fifteenth Court of Appeals have been the subject of statewide discussion. Appellant expressly states that he alleges no personal bias, misconduct, or impropriety by any Justice of this Court. This contextual point is preserved only so that, if structural-impartiality issues are ever raised by others or reviewed by higher courts in unrelated cases, it is not deemed waived as to this matter.

## SECTION 6. ERRATA

**ERRATA NO. 1 — Monarch Ranch (Missing From Appellant's prior filing to Clarify the Number of Defendant)**

Omission of Monarch Ranch and Its Relevance to Defendant Count and Systemic Parkland Violations

Appellant clarifies that Monarch Ranch was inadvertently omitted from the October 17 Letter regarding the Court's reference to "approximately forty-two defendants." Monarch Ranch is among the core development entities referenced from the inception of this litigation, and its exclusion created the mistaken impression that the developer list was shorter than in fact. This was a clerical error on Appellant's part, but very important to correct. Monarch Ranch therefore should be included as an additional real party in interest under the umbrella of land-use, parkland-dedication, and public-trust claims. Appellant further supplements this **Errata with Exhibit N pg 127** — Monarch Ranch

Land Use Map, showing the four land-use classifications proposed for the subdivision:

•(SF-2) Residential — 101.0 acres

•(C-2) Medium Commercial — 11.3 acres

•Floodplain — 13.6 acres

•Open Space — 8.6 acres

There is zero parkland dedication anywhere in the 134.5-acre site plan.

No acreage is allocated to public parkland, nor for public recreation dedication consistent with Chapter 9, parkland requirements under Manor Code, or public-amenity obligations commonly applied to all other residential developers. This omission is directly relevant to Appellant's claims of unequal enforcement, selective waiver of municipal obligations for preferred developers, and the City's continuing pattern of eliminating public space while rapidly expanding residential population.

Therefore, this developer owes easily over $100,000 of IN-LIEU Park Fees, along with Developer Park Fees; or to dedicate acres of land for a city park at a location on-site of the city's choice. A required water retention pond also doesn't count as parkland. The omission of Monarch Ranch from the earlier Defendant-Clarification Letter is corrected here so that the record accurately reflects all real-party development actors whose approvals, omissions, and incentives form part of Appellant's public-trust and ultra vires claims.

**ERRATA NO. 2 — Correction Regarding different Austin ETJ De-Annexation; and SB 2038 Petition used by Dalfen Industrial**

Appellant previously believed that the DG Manor Downs / Dalfen Industrial tract was undergoing a formal City of Austin ETJ de-annexation process at the same time as a similarly sized 48-acre parcel on Littig Road. Appellant now corrects the record: the Littig Road parcel was different parcel by a different developer involved in a different Austin ETJ de-annexation process — not the Dalfen Industrial tract.

Upon further review, Appellant confirms that:

•Dalfen Industrial withdrew its Austin de-annexation application,

•and instead invoked Texas Senate Bill 2038,

•which enabled Dalfen to unilaterally force removal from the Austin ETJ after the statutory protest window expired.

This correction is significant because:

1.Austin's environmental, watershed, and roadway-mitigation requirements (including millions in required improvements related to Gilleland Creek, floodplain, and traffic impacts) were avoided entirely — obligations estimated in the range of $3–5 million.

2.Rather than exercising caution, the City of Manor rushed to accept the development, granting:

•a Chapter 380 financial concession package valued at up to $8.5 million,

•an abbreviated approval timeline,

•and no meaningful review of environmental, historical, landscaping, watershed, traffic or to any ignored "Comprehensive Plan" concerns.

3. As a direct result of this rushed and poorly vetted action, the City is enabling imminent and irreparable destruction of:

•the historic covered stadium bleachers at Manor Downs,

•heritage and riparian trees,

•and established Gilleland Creek watershed protection zones on agricultural and rural parcels wholly unsuited for a massive warehouse district.

This Errata corrects the mistaken assumption that Dalfen followed the normal Austin ETJ de-annexation review path. Instead, Dalfen used SB 2038 to bypass Austin's regulatory safeguards and then received an extraordinary financial subsidy and near-total waiver of public-interest protections from the City of Manor.

**PRAYER**

Appellant respectfully requests that this Court:

1. Take judicial notice of the structural defects, constitutional violations, and statutory errors documented herein and in the attached Exhibits A–M;

2.Correct the unlawful annexation and unvested development approvals associated with Ordinance No. 774 and the Dalfen/Manor Downs project, including by recognizing that only racetrack/open-space use is vested under Tex. Loc. Gov't Code § 43.002(a)(2);

3.Address the systemic due-process concerns documented in Appellant's municipal-complaint chronology, including selective enforcement, retaliation, and the non-functioning Ethics and Charter-oversight structures;

4.Require the creation of a record in all dispositive and absent-party hearings, and in particular in all proceedings materially affecting Appellant's rights or the rights of the public to heritage, parkland, and election integrity;

5.Grant such further relief as justice requires, including (as appropriate) remand with instructions, temporary or permanent injunctive relief, limited discovery into 2024 planning intake records, structural or mandamus-type directives to ensure compliance with TOMA and the Public Information Act, and any other orders necessary to restore meaningful review and public trust.

Respectfully submitted,

_____/s/ Robert Edward Battaile_____

Robert Edward Battaile, Appellant / Relator / Plaintiff Pro Se

502 E Eggleston St., Unit B Manor, Texas 78653

robert@manortx.us   512-662-2955

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Supplemental Letter Brief was served on all

parties through the eFileTexas system and by email where applicable on November

25th, 2025.

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Pro Se

## CERTIFICATE OF COMPLIANCE

I certify that this document contains approximately 4,167 words, excluding the parts

exempted by Rule 9.4(i)(1).

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Pro Se

# EXHIBITS

A. 11/16/2025 – Ethics Complaint (CRC Meetings) .....................................................31

B.1. and B.2. CETJ-2024-1 Austin Planning and other Manor Downs docs..............46

C.1. and C.2. – City Organization Chart (Structural Defects) .....................................56

D. 10/21/2025 – Parking Violations (TC 545.303) .....................................................58

E. 10/27/2025 – Abuse of Official Capacity (PC 39.02) city employees immune.......63

F. 11/03/2025 – Disorderly Conduct (PC 42.01) .......................................................72

G. 10/27/2025 – TOMA Violations (Secret CRC Meetings) ......................................92

H. 11/14/2025 – Recording Rights / Official Oppression ...........................................94

I. 11/16/2025 – Ethics Commission Non-Activation ................................................102

J. 11/17/2025 – IT Denial of Audio Access ..............................................................116

K. 11/17/2025 – Police Denial of PIA Access ..........................................................120

L. 11/21/2025 – Continued Audio-Access Denial .....................................................123

M. 11/21/2025 – Suppression of Public-Speaking Rights .........................................126

N. Monarch Ranch paying no in-lieu Parkland fees despite developer's own siteplan not containing any "parkland" color code in the legend ..................................................131

O. Misuse of City funds to mow private developer's lots ..........................................132

EXHIBIT A.

For the fourth time in a row, the City of Manor convened its Charter Review Commission in complete secrecy—**no livestream, no audio, no video, no record of any kind**—despite possessing the very equipment used daily to broadcast every other meeting type. I witnessed not only the City's deliberate refusal to provide an audio feed or to document the proceedings but also the unprofessional, hostile conduct of City Secretary Lluvia Almaraz, who publicly confronted and disparaged me when I questioned this secrecy and lack of intelligible audio. This pattern of behavior, combined with the absence of any official record, undermines public trust, violates the City's Personnel Manual and Ethics Code, and destroys the integrity required for a commission tasked with rewriting Manor's governing Charter.

The inclusion of an ETHICS COMMISSION on the City Organization Chart is complete PROPAGANDA and deception. City Manager has **gone rogue** and become an untethered corrupt city official apparently now in love with and beholden to... Scott Dunlop. My "official" Ethics Commission complaint follows herewith:

_____

**Attn: Leslie Moore, City of Manor City Manager**

**ETHICS COMMISSION COMPLAINT**

**Secret Charter Review Commission Meetings, Retaliatory Conduct by the City Secretary, and Systemic Transparency Violations**

**Unsworn Declaration of Robert Edward Battaile**

I, Robert Edward Battaile, submit this Ethics Complaint against City Secretary Lluvia Almaraz, Assistant City Manager Brittany Lopez, and supervisory officials responsible for the conduct, operation, and record-keeping of the Charter Review Commission (CRC).

This complaint concerns deliberate secrecy, public intimidation, and retaliatory conduct in violation of the Personnel Manual, Manor's Ethics Code, and constitutional guarantees of transparency.

**1. Four Consecutive Secret Charter Review Commission Meetings**

The Charter Review Commission has now held FOUR meetings — all without livestream, without audio, without video, without AV recording, and without the archived public record the City routinely provides for every other board, commission, and council meeting.

Manor boasts a state-of-the-art audiovisual system, and

- City Council meetings

- P&Z meetings

- Budget workshops

- Public hearings

are routinely live-streamed, recorded, and archived permanently.

Yet the Charter Review Commission, the body entrusted with rewriting the Constitution

of the City, has been kept entirely off the record.

This is not a glitch — it is policy-level secrecy.

## 2. Proof the Lack of Recording Harms Governance Itself

At the most recent meeting, one CRC Commissioner, Shervonne James openly admitted to the group that she had no idea what was decided at the previous meeting. They had no record to review because the City intentionally produced NONE.

As a result:

•Commissioners wasted significant meeting time

•Other commissioners had to verbally reconstruct past decisions

•No citizen could meaningfully follow the process

•No accountability exists for statements, advice, or votes

**A City that claims to support "good governance" cannot operate this way.**

If even a Commissioner cannot follow past proceedings, how can the public, press, or courts? Further, the city has NO MEANS for a citizen to email the Commissioners. Thus, the city's actions *pro-actively* <u>discourage</u> citizen input and engagement.

## 3. I Was the ONLY Citizen Present at the last meeting; and one of two citizens at this last meeting— Because the City Made Public Access Impossible unless you attended in person. Further, <u>No Agenda comments</u> were allowed at the meeting. The city:

•Provided no livestream

•Provided no recording

•Provided no public notice that the meeting would not be broadcast

•Intentionally created barriers that prevent citizens from monitoring the proceedings

This violates both the spirit and intent of:

•Texas Constitution Art. I § 8 (open discourse)

•Art. I § 27 (petition clause)

•Open Meetings principles requiring meaningful access to proceedings

*When a city secretly revises its Charter — the very document defining the limits of government power — the public's trust collapses.*

## 4. Retaliatory Incident with City Secretary Lluvia Almaraz

At this same meeting, I asked Asst. City Secretary, Brittany Lopez a standard transparency question: **"**Can I get an audio feed of these meetings?"

Before Assistant City Secretary, Lopez could respond, City Secretary Lluvia Almaraz loudly and rudely interrupted: "No. We don't do that in Manor"

I noted that "lots of cities do," and returned to my camera on the other side of the room.

A few moments later, Almaraz crossed the room in an aggressive posture and declared loudly: **"**NO other cities do that." To which I replied, "Lots of cities provide a news feed. I'm a newspaper."

Almaraz responded — loudly, disparagingly: **"**You're NOT a newspaper."

I replied: **"My circulation is bigger than the Manor Journal."**

This was witnessed by:

>•Commissioner Julie Leonard, whose shocked expression confirmed the misconduct; the other 3 commissioners and

>•Bobby Reese, who also witnessed the inappropriate and uninvited exchange

This was textbook intimidation and in direct violation of the Personnel Manual's requirement that staff:

• Treat citizens with courtesy

• Avoid intimidation or disparagement

• Maintain professional decorum

• Support public access and transparency

   **Complainant notes that:** It was Battaile's email Newsletters published about her alleged Election Coercion that led her to make a false police report that resulted in my arrest and coercive bail restrictions that negatively impacted my run for Mayor in 2024. For her to now claim that I'm "not a newspaper" is wishful thinking at best.

**5. Violations of the Manor Ethics Code**

Manor Ethics Code § 12.02.032 prohibits:

**(a) Misuse of Public Office**

**(b) Abuse of Position**

**(c) Disrespect toward citizens**

**(d) Retaliation against critics or whistleblowers**

The secrecy around the Charter Review Commission and Ms. Almaraz's retaliatory confrontation constitute all four. The City cannot selectively turn off accountability for the committee rewriting its Charter.

**6. The Law: The City Manager MUST Convene the Ethics Commission**

Manor Code of Ordinances § 12.02.041 is mandatory:

**"**Upon receipt of a written ethics complaint, the City Manager SHALL convene the Ethics Commission and the Commission SHALL hear the complaint."

Not optional.

Not conditional.

Not discretionary.

If the City Manager fails to convene the Ethics Commission over this complaint, that itself is a separate ethics violation and a due process violation under the Texas Constitution.

**7. Constitutional Challenge — Manor's Ethics Commission Cannot Be Impartial**

This complaint highlights a deeper structural defect:

**The Ethics Commission is appointed by the Mayor and Council — the very officials who are accused of wrongdoing.**

This makes impartial review impossible and violates:

　　•Texas Constitution Art. I § 19

- U.S. Constitution, Fourteenth Amendment

- Ward v. Monroeville

- Tumey v. Ohio

***A tribunal cannot be impartial if the accused appoints the judges.***

Because of this: I intend to challenge the constitutionality of Manor's Ethics Commission structure in my ongoing litigation.

## 8. Requested Reform

I request that the City adopt an independent Ethics Commission appointment system, such as:

A. Appointment by outside municipal attorneys

from Elgin, Pflugerville, Taylor, Austin, etc.

B. Appointment of a Special Master by the Fifteenth Court of Appeals

to oversee ethics matters until Manor reforms its system.

C. Randomized selection from qualified citizen applicants

rather than mayoral, council or city manager appointment.

D. Election by the Voters.

## RELIEF REQUESTED

I request that:

1. City Manager immediately convene the Ethics Commission as required by law.

2. The Commission hear this complaint and issue findings.

3.The Commission sanction or reprimand the responsible officials.

4.City create permanent recordings of all Charter Review Commission meetings.

5.City adopt an independent appointment structure for the Ethics Commission.

6.This matter be included as evidence of systemic retaliation and secrecy in future litigation.

## UNSWORN DECLARATION

(Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Robert Edward Battaile, my date of birth is Jaugust 14, 1950, and I live at 502 E Eggleston St., Unit B, Manor, Texas 78653. My email address is robert@manortx.us, and my telephone number is 512-662-2955.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of November, 2025, in Manor, Texas.

_____/s/_____

Robert Edward Battaile, Complainant Pro Se

EXHIBIT A.

For the fourth time in a row, the City of Manor convened its Charter Review Commission in complete secrecy—**no livestream, no audio, no video, no record of any kind**—despite possessing the very equipment used daily to broadcast every other meeting type. I witnessed not only the City's deliberate refusal to provide an audio feed or to document the proceedings but also the unprofessional, hostile conduct of City Secretary Lluvia Almaraz, who publicly confronted and disparaged me when I questioned this secrecy and lack of intelligible audio. This pattern of behavior, combined with the absence of any official record, undermines public trust, violates the City's Personnel Manual and Ethics Code, and destroys the integrity required for a commission tasked with rewriting Manor's governing Charter.

The inclusion of an ETHICS COMMISSION on the City Organization Chart is complete PROPAGANDA and deception. City Manager has **gone rogue** and become an untethered corrupt city official apparently now in love with and beholden to... Scott Dunlop. My "official" Ethics Commission complaint follows herewith:

_____

**Attn: Leslie Moore, City of Manor City Manager**

**ETHICS COMMISSION COMPLAINT**

**Secret Charter Review Commission Meetings, Retaliatory Conduct by the City Secretary, and Systemic Transparency Violations**

## Unsworn Declaration of Robert Edward Battaile

I, Robert Edward Battaile, submit this Ethics Complaint against City Secretary Lluvia Almaraz, Assistant City Manager Brittany Lopez, and supervisory officials responsible for the conduct, operation, and record-keeping of the Charter Review Commission (CRC).

This complaint concerns deliberate secrecy, public intimidation, and retaliatory conduct in violation of the Personnel Manual, Manor's Ethics Code, and constitutional guarantees of transparency.

## 1. Four Consecutive Secret Charter Review Commission Meetings

The Charter Review Commission has now held FOUR meetings — all without livestream, without audio, without video, without AV recording, and without the archived public record the City routinely provides for every other board, commission, and council meeting.

Manor boasts a state-of-the-art audiovisual system, and

- •City Council meetings

- •P&Z meetings

- •Budget workshops

- •Public hearings

are routinely live-streamed, recorded, and archived permanently.

Yet the Charter Review Commission, the body entrusted with rewriting the Constitution

of the City, has been kept entirely off the record.

This is not a glitch — it is policy-level secrecy.

## 2. Proof the Lack of Recording Harms Governance Itself

At the most recent meeting, one CRC Commissioner, Shervonne James openly admitted to the group that she had no idea what was decided at the previous meeting. They had no record to review because the City intentionally produced NONE.

As a result:

•Commissioners wasted significant meeting time

•Other commissioners had to verbally reconstruct past decisions

•No citizen could meaningfully follow the process

•No accountability exists for statements, advice, or votes

**A City that claims to support "good governance" cannot operate this way.**

If even a Commissioner cannot follow past proceedings, how can the public, press, or courts? Further, the city has NO MEANS for a citizen to email the Commissioners. Thus, the city's actions *pro-actively* <u>discourage</u> citizen input and engagement.

## 3. I Was the ONLY Citizen Present at the last meeting; and one of two citizens at this last meeting— Because the City Made Public Access Impossible unless you attended in person. Further, <u>No Agenda comments</u> were allowed at the meeting. The city:

•Provided no livestream

•Provided no recording

•Provided no public notice that the meeting would not be broadcast

•Intentionally created barriers that prevent citizens from monitoring the

proceedings

This violates both the spirit and intent of:

•Texas Constitution Art. I § 8 (open discourse)

•Art. I § 27 (petition clause)

•Open Meetings principles requiring meaningful access to proceedings

*When a city secretly revises its Charter — the very document defining the limits of government power — the public's trust collapses.*

**4. Retaliatory Incident with City Secretary Lluvia Almaraz**

At this same meeting, I asked Asst. City Secretary, Brittany Lopez a standard

transparency question: **"**Can I get an audio feed of these meetings?"

Before Assistant City Secretary, Lopez could respond, City Secretary Lluvia

Almaraz loudly and rudely interrupted: "No. We don't do that in Manor"

I noted that "lots of cities do," and returned to my camera on the other side of the room.

A few moments later, Almaraz  crossed the room in an aggressive posture and declared

loudly: **"**NO other cities do that." To which I replied, "Lots of cities provide a news

feed. I'm a newspaper."

Almaraz responded — loudly, disparagingly: **"**You're NOT a newspaper."

I replied: **"My circulation is bigger than the Manor Journal."**

This was witnessed by:

•Commissioner Julie Leonard, whose shocked expression confirmed the misconduct; the other 3 commissioners and

•Bobby Reese, who also witnessed the inappropriate and uninvited exchange

This was textbook intimidation and in direct violation of the Personnel Manual's requirement that staff:

• Treat citizens with courtesy

• Avoid intimidation or disparagement

• Maintain professional decorum

• Support public access and transparency

   **Complainant notes that:** It was Battaile's email Newsletters published about her alleged Election Coercion that led her to make a false police report that resulted in my arrest and coercive bail restrictions that negatively impacted my run for Mayor in 2024. For her to now claim that I'm "not a newspaper" is wishful thinking at best.

**5. Violations of the Manor Ethics Code**

Manor Ethics Code § 12.02.032 prohibits:

**(a) Misuse of Public Office**

**(b) Abuse of Position**

**(c) Disrespect toward citizens**

15-25-001420CV

**(d) Retaliation against critics or whistleblowers**

The secrecy around the Charter Review Commission and Ms. Almaraz's retaliatory confrontation constitute all four. The City cannot selectively turn off accountability for the committee rewriting its Charter.

**6. The Law: The City Manager MUST Convene the Ethics Commission**

Manor Code of Ordinances § 12.02.041 is mandatory:

**"**Upon receipt of a written ethics complaint, the City Manager SHALL convene the Ethics Commission and the Commission SHALL hear the complaint."

Not optional.

Not conditional.

Not discretionary.

If the City Manager fails to convene the Ethics Commission over this complaint, that itself is a separate ethics violation and a due process violation under the Texas Constitution.

**7. Constitutional Challenge — Manor's Ethics Commission Cannot Be Impartial**

This complaint highlights a deeper structural defect:

**The Ethics Commission is appointed by the Mayor and Council — the very officials who are accused of wrongdoing.**

This makes impartial review impossible and violates:

- Texas Constitution Art. I § 19

- U.S. Constitution, Fourteenth Amendment

- Ward v. Monroeville

- Tumey v. Ohio

***A tribunal cannot be impartial if the accused appoints the judges.***

Because of this: I intend to challenge the constitutionality of Manor's Ethics

Commission structure in my ongoing litigation.

## 8. Requested Reform

I request that the City adopt an independent Ethics Commission appointment system,

such as:

A. Appointment by outside municipal attorneys

from Elgin, Pflugerville, Taylor, Austin, etc.

B. Appointment of a Special Master by the Fifteenth Court of Appeals

to oversee ethics matters until Manor reforms its system.

C. Randomized selection from qualified citizen applicants

rather than mayoral, council or city manager appointment.

D. Election by the Voters.

## RELIEF REQUESTED

I request that:

1. City Manager immediately convene the Ethics Commission as required by law.

2. The Commission hear this complaint and issue findings.

3. The Commission sanction or reprimand the responsible officials.

4. City create permanent recordings of all Charter Review Commission meetings.

5. City adopt an independent appointment structure for the Ethics Commission.

6. This matter be included as evidence of systemic retaliation and secrecy in future litigation.

## UNSWORN DECLARATION

(Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Robert Edward Battaile, my date of birth is Jaugust 14, 1950, and I live at 502 E Eggleston St., Unit B, Manor, Texas 78653. My email address is robert@manortx.us, and my telephone number is 512-662-2955.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of November, 2025, in Manor, Texas.

_____/s/_____

Robert Edward Battaile, Complainant Pro Se

EXHIBIT B.1.  <mark>Relator/Appellant's highlights</mark>.

**CETJ-2024-0001 Staff Report (October 15, 2024)**

Memorandum To: Chair and Members of the Planning Commission From: Sara Groff, Planning Department – Jurisdictional Matters Date: October 15, 2024 Re: Proposed release of approximately 146.920 acres of Austin's extraterritorial jurisdiction ("ETJ") to the City of Manor CETJ-2024-0001

The City of Manor, at the behest of a property owner, has requested the release of approximately 146.920 acres of Austin's extraterritorial jurisdiction (ETJ) to be included in Manor ETJ and subsequently annexed in Manor city limits. The property in question, known locally as Manor Downs is located in northeastern Travis County on Hill Lane just east of SH 130, outside Council District 1. Along with the request, the City of Manor has agreed to enter into an Inter-local Agreement (ILA) which will address Austin Water and Watershed Protection Division's concerns. In 2023, the State Legislature passed S.B. 2038, which allows property owners to seek a release of their property in an administrative manner. The S.B. 2038 route bypasses any staff evaluation, Commission review, and Council vote. Since S.B. 2038 is being challenged in the courts, the landowner and City of Manor approached the City of Austin about utilizing the City's pre S.B. 2038 ETJ Release Policy to protect the released property from any future court rulings. If the landowner(s) use S.B. 2038 to release, the City of Austin stands to lose some, if not all, of the requests covered in the ILA. This request was

distributed to the following staff: Planning, Austin Water, Watershed Protection Division, and Transportation and asked to review based on Austin's 2007 ETJ Release Policy. In accordance with the 2007 City Council adopted policy regarding ETJ adjustments, requests for ETJ release are typically reviewed by staff from several city departments and evaluated in terms of: • Annexation potential • Environmental impacts • Impact on infrastructure investments • Long-term effects of cumulative ETJ releases • Hardship or extenuating circumstances

Annexation of this tract by the City of Austin is not feasible in the long-term given its location of about 1 mile from the full purpose jurisdiction. However, annexation by the City of Manor is possible due to adjacency of city limits and would be a benefit to Manor and the long-term disposition of the property. Manor Downs also holds historical significance to the City of Manor. Generally, Austin City Council looks for equivalent environmental protection to be provided on land released from the City's jurisdiction. Staff from Watershed Protection have reviewed the proposed release and find it agreeable if the following conditions are encompassed in the ILA:

1. City of Austin Suburban Watershed impervious cover restrictions will be maintained.

2. Green stormwater water quality controls as defined by the City of Austin's Environmental Criteria Manual Section 1.6.7 shall be provided to treat 100% of the water quality volume.

3. There will be a one-hundred-foot (100') buffer from the centerline of the western tributary of Gilleland Creek.

4. There will be no development allowed within the 100' buffer of the western tributary of Gilleland Creek other than a single road crossing and development allowed by buffer averaging as permitted by ECM Section 1.5.2(D) to reduce the buffer and allow building access.

5. The owner of the Manor Release Tract will use seeding requirements as defined in the City of Austin's standard specification 604S.6 - Native Grass and Forb Seeding and provide "no mow" signs on the banks of the detention/water quality pond to be constructed adjacent to the western tributary of Gilleland Creek.

The area in question is located within Austin Water's wastewater CCN. Concerns regarding transferring/ dedication of easements, approval of construction plans for any wastewater lines, and installation of Austin Water infrastructure, which may eventually reside in another municipality's full purpose jurisdiction raised by Austin Water will be addressed in the ILA between the City of Manor and the City of Austin. Finally, releasing this area would not negatively impact any existing or planned City investments in roadway infrastructure. The area is not served by City-maintained roads. Staff recommends release of the Manor Downs property in conjunction with the successful approval of an ILA capturing Austin Water and Watershed Protection Division's concerns. City Council consideration of this request is tentatively scheduled for

November 7, 2024.

Attachments: A. Written request from City of Manor for release, dated September April 30, 2024. B. Map of proposed release area. C. Field Notes for Property D. Approved Manor City Council resolution 2024-16 officially requesting release of Austin ETJ.

RESOLUTION NO. _____ A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF MANOR, TEXAS, REQUESTING THE RELEASE OF A PORTION OF THE EXTRATERRITORIAL JURISDICTION OF THE CITY OF AUSTIN, TEXAS TO THE EXTRATERRITORIAL JURISDICTION OF THE CITY OF MANOR, TEXAS.

WHEREAS, the Cities of Austin, Texas and Manor, Texas are located within Travis County Texas and are adjacent or otherwise share certain common boundaries of extraterritorial jurisdiction and corporate limits; and WHEREAS, a tract of land consisting of approximately 146.920 acres is located within the extraterritorial jurisdiction of the City of Austin, Texas as more particularly described and depicted on Exhibit "A" attached hereto (the "Property"); and WHEREAS, the owner of the Property desires to have the Property (the "ETJ Tract") be released from the City of Austin, Texas' extraterritorial jurisdiction and become a part of the extraterritorial jurisdiction of the City of Manor, Texas (the "City") in order to develop the Property as an industrial park with an amphitheater to preserve the cultural history of the City; and

WHEREAS, a release of the ETJ Tract from the City of Austin, Texas is necessary in order to develop the Property while preserving the cultural history of the City; and WHEREAS, the City Council of the City of Manor, Texas (the "City Council") has determined that it is in the best interest of the City to have the development of the Property and the preservation of the City's cultural history by requesting the release of the ETJ Tract from the City of Austin, Texas and adjust the extraterritorial jurisdiction of the City so that the ETJ Tract becomes a part of the extraterritorial jurisdiction of the City. NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF MANOR, THAT: SECTION 1. The City Council hereby approves the recitals contained in the preamble of this Resolution and finds that all the recitals are true and correct and incorporate the same in the body of this Resolution as findings of fact. SECTION 2. The City Council hereby directs the City Manager of the City to request the release of the ETJ Tract from the City of Austin, Texas and adjust the extraterritorial jurisdiction of the City so that the ETJ Tract becomes a part of the extraterritorial jurisdiction and corporate limits of the City of Manor. SECTION 3. If any section, article, paragraph, sentence, clause, phrase or word in this resolution or application thereof to any persons or circumstances is held invalid or unconstitutional by a court of competent jurisdiction, such holding shall not affect the validity of the remaining portions of this resolution; and the City Council hereby declares it would have passed such remaining portions of the resolution despite such invalidity, which remaining

15-25-001420CV

portions shall remain in full force and effect. PASSED AND ADOPTED by the City Council of Manor, Texas, at a regular meeting on the day of , 2024, at which a quorum was present, and for which due notice was given pursuant to Government Code, Chapter 551.

_____

Dr. Christopher Harvey, Mayor ATTEST: Lluvia T. Almaraz, City Secretary City of Manor, Texas [CITY SEAL]

_____

15-25-001420CV

**EXHIBIT B.2. POSTPONEMENT AT AUSTIN CITY PLANNING COMMISSION**

October 22, 2024 Planning Commission Agenda - Item 18 Excerpt

**Item 18: CETJ-2024-0001 - Manor Downs Industrial Park ETJ Release and Accompanying Interlocal Agreement (ILA)**

Location: 9200 Hill Lane, Gilleland Creek Owner/Applicant: City of Manor Agent: Scott Moore, City Manager, City of Manor Request: Provide a recommendation for the release of Manor Downs Industrial Park from Austin's ETJ. Staff Rec.: Recommended Staff: Sara Groff, 512-974-8074, sara.groff@austintexas.gov Planning Department

No additional linked backups in agenda text.

October 22, 2024 Planning Commission Minutes - Item 18 Excerpt

Item 18: CETJ-2024-0001 - Manor Downs Industrial Park ETJ Release and Accompanying Interlocal Agreement (ILA)

Location: 9200 Hill Lane, Gilleland Creek Watershed Owner/Applicant: City of Manor Agent: Scott Moore, City Manager, City of Manor Request: Provide a recommendation for the release of Manor Downs Industrial Park from Austin's ETJ. Staff Recommendation: Recommended

Discussion and Action: The motion to approve the Applicant's postponement request to November 12, 2024, was approved on the consent agenda on Commissioner Woods' motion, Commissioner Maxwell's second, on a 13-0 vote.

No public comments were recorded for this item. No further discussion, motions, or votes occurred beyond the postponement approval. The item was not withdrawn.

23 web pages

**EXHIBIT B.3.** Historic Manor Downs Stadium Racetrack v "modern amphitheater"



below? No comparison. Above = Saving Manor history... Below = neighborhood Park.



**EXHIBIT C.1.**



EXHIBIT C.2. MUNICIPAL COURT reports to Finance Director violating separation of powers.



15-25-001420CV

**EXHIBIT D.**

CITY OF MANOR, TEXAS – MUNICIPAL CRIMINAL COMPLAINT

(UNSWORN)

Complainant:

Robert Edward Battaile

502 E. Eggleston St., Unit B

Manor, Texas 78653

robert@manortx.us 512-662-2955

To:

Clerk of the Municipal Court, City of Manor

105 E. Eggleston Street Manor, Texas 78653

I. Statement of Offense

I, Robert Edward Battaile, a resident and taxpayer of the City of Manor, hereby

make this sworn complaint that on October 21 at 10:55 am within the corporate

limits of the City of Manor, the following violations of law occurred:

1 Unknown driver of City of Manor Public Works vehicle bearing Texas

license plate 135-4066; and

2 Unknown driver of City of Manor Public Works vehicle bearing Texas

license plate 146-3727

did then and there knowingly park and leave said vehicles standing in a location

clearly posted with an official "NO PARKING" sign, in violation of Texas Transportation Code § 545.303(b) and Manor Code of Ordinances § 12.02.031 (adopting state parking restrictions).

Such conduct constitutes a Class C misdemeanor pursuant to Tex. Transp. Code § 542.301, punishable by a fine not to exceed $200 or as otherwise provided by the City's schedule of fines (typically ≈ $75 for "No Parking Zone" violations).

II. Location of Offense

The violations occurred within the public parcel known locally as "Art Park," situated at the intersection of Parsons Street and Lexington Street, entirely within the corporate limits of the City of Manor, Texas.

III. Basis of Complaint

The above-referenced vehicles, clearly marked "City of Manor – Public Works," were personally observed by Complainant parked within the posted "NO PARKING" zone of Art Park.

Photographic documentation of each violation is attached as:

• Exhibit A: Vehicle TX 135-4066

• Exhibit B: Vehicle TX 146-3727

Each photograph clearly depicts the vehicle, the posted sign, and the surrounding paved surface, demonstrating knowing and ongoing disregard for posted restrictions in an area designated for public recreation.

IV. Request for Enforcement

Complainant respectfully requests that the Municipal Court of Manor:

1 Issue citations or summonses to the responsible individuals operating the vehicles described herein;

2 Assess appropriate fines consistent with the City's schedule of penalties; and

3 Record this complaint to ensure equal enforcement of Manor's ordinances without favoritism or exemption for City employees or contractors.

V. Demand for Recusal of City Attorneys – Conflict of Interest

Complainant further requests that the Knight Law Firm, serving as general counsel to the City of Manor, be recused from any representation, consultation, or defense of the individual City employees named or described in this complaint, including but not limited to the Public Works Director and subordinate staff.

Grounds:

1 The Knight Law Firm's client of record is the City of Manor as a municipal entity, not its employees in their personal or individual capacities.

2 Representation of individual employees in connection with alleged ordinance violations constitutes a conflict of interest under Texas Disciplinary Rules of Professional Conduct § 1.06.

3 Any advice or participation by the City Attorney's office in this matter would taint the proceedings and undermine public confidence in impartial enforcement.

Accordingly, Complainant requests that an independent municipal prosecutor or special counsel be assigned for review and prosecution of this complaint, consistent with Tex. Code Crim. Proc. art. 45.201.

Notice of Prior Report to Manor Police Department

VI. Complainant further states that on November 6, 2025, prior to filing this Municipal Criminal Complaint, he provided written notice of the same parking violations described herein to Officer Jaleesa Jones of the Manor Police Department by email, together with an unsworn declaration and photographic exhibits identifying the vehicles and the posted "NO PARKING" sign within Art Park. Thus, as of November 6, 2025, Manor PD was formally informed of these violations and requested to take enforcement action. This complaint is filed on November 7, 2025, to ensure that a clear record exists before the Municipal Court that Manor's law enforcement and prosecution authorities were notified and had an opportunity to respond.

VII. Declaration

I declare under penalty of perjury under the laws of the State of Texas that the foregoing information is true and correct to the best of my knowledge and belief.

Executed this 7th day of November 2025, in Manor, Texas.

_____

Robert Edward Battaile, Complainant

Attachments

• Exhibit A: Photograph – Public Works vehicle TX 135-4066 within "No

Parking" zone

• Exhibit B: Photograph – Public Works vehicle TX 146-3727 within "No

Parking" zone

15-25-001420CV

**EXHIBIT E.**

**IN THE MUNICIPAL COURT OF THE CITY OF MANOR, TEXAS COMPLAINT PACKAGE – DISORDERLY CONDUCT & RELATED OFFENSES.**

**COVER / FILING SHEET**

**Complainant and Affiant:**

Robert Edward Battaile

502 E Eggleston St., Unit B

Manor, TX 78653

robert@manortx.us • 512-662-2955

**Respondents:**

1. Leslie Moore – City Manager

2. Lluvia Almaraz – City Secretary

**Accompanying Filings:**

- Exhibit A – Unsworn Criminal Complaint (Narrative)

- Request for Recusal of Judge Caballero

- Request for Independent Prosecutor Due to Conflict of Interest

15-25-001420CV

- Certificate of Service & Verification

**Purpose:**

To initiate Class C Misdemeanor proceedings for Disorderly Conduct arising from official misconduct on August 19, 2025, and to ensure the complaint is reviewed by an impartial judge and prosecutor, free of conflicts of interest. This filing is made under the citizen-complaint authority recognized in **Tex. Code Crim. Proc. art. 2.01** and **art. 45.019(a)(1)**, which permit any credible person to bring facts of an offense before a magistrate or municipal court for review. See also *State v. Stone*, 919 S.W.2d 424 (Tex. Crim. App. 1996) (citizen complaint sufficient to commence prosecution when sworn to before proper authority).

**EXHIBIT A – UNSWORN CRIMINAL COMPLAINT (NARRATIVE)**

STATE OF TEXAS §

CITY OF MANOR §

**UNSWORN DECLARATION OF ROBERT EDWARD BATTAILE**

*(Complainant and Affiant)*

My name is **Robert Edward Battaile**. My address is 502 E Eggleston St., Unit B,

Manor, Texas 78653. I am over 18 years of age and competent to make this declaration.

1.  On **August 19, 2025**, the final day for candidates to file for the November City Council election, I was lawfully present and communicating with **City Secretary Lluvia Almaraz** and **City Manager Leslie Moore** at **Manor City Hall**, 105 E Eggleston Street. Earlier that day I had telephoned Ms. Almaraz to make an appointment for **Mr. Bobby Reese**, a 22-year U.S. Army veteran and long-time Manor resident, to come in and complete his council-candidate paperwork before the statutory filing deadline.

2.  When Mr. Reese and I arrived, City officials refused to provide him the necessary forms or accept his filing. Ms. Almaraz never took a written application or presented Mr. Reese with the Candidate Handbook. Further, she claimed he was ineligible due to his "suspended" Voter Registration. That's incorrect. Further, she never provided a written reason for his rejection. When Mr. Reese and Battaile returned after the first rejection, Mr. Moore said words to the effect that "it doesn't matter now, it's too late to apply" ~ yet it was only 2:00. The City's own Candidate Handbook says clearly that candidates have until 5:00 pm to apply. Upon learning of this additional false claim, Battaile walked back in calmly and showed Moore the page in said Handbook with the end time circled.

Battaile expressed himself and Mr. Moore and Mrs. Almaraz over-reacted due to their crimes being exposed by a person with the courage to expose said crimes

of Election Coercion by preventing a candidate his rightful place on the ballot contrary to their "duty" to hold free and fair elections. Apparently, Moore summoned the **Manor Police**. No disturbance existed until the City Manager and City Secretary acted outside their authority and contrary to Manor Personnel policies and legal restraints. Battaile and Reese were acting within our lawful right to participate in the election process.

3. The deliberate decision by Ms. Moore and Ms. Almaraz behavior and subsequent decision to call in police officers under these circumstances created the only disorderly conduct present that day. Battaile's freedom of speech has been re-affirmed in other City of Manor retaliatory arrests. On Aug. 19, the City Manager and City Secretary's actions obstructed a citizen's ballot access and criminalized lawful speech. Such conduct constitutes **Disorderly Conduct** under **Texas Penal Code § 42.01(a)(4) and (8)**, and amounts to **Official Oppression and Abuse of Official Capacity** under **§§ 39.02–39.03**, by knowingly misusing governmental authority to deprive Mr. Reese and me of rights secured by law.

4. This incident is the same factual event later used by the City to justify issuing a citation against me. The identical evidence demonstrating my innocence equally demonstrates the Respondents' wrongdoing.

5. Although later claiming they were 'afraid' of Mr. Battaile, the two came out from behind the protected glass wall area to confront the Claimant. Mr. Moore

attempted to intimidate by standing over Mr. Battaile in close proximity in a threatening way; and continued to stand there blocking Claimant's peaceful exit. Ms. Almaraz "chased" Claimant out of the lobby yelling at him and calling him a 'racist' while keeping a Black man off the ballot illegally. This behavior is confirmed by security camera footage from the City Hall Lobby cameras. The only people "yelling" were the City Manager and City Secretary.

6. When police arrived, Moore said he had to 'use lots of self control' and otherwise 'it wouldn't have been pretty' [implying he would have used violence against Claimant] and then said about the Claimant that 'he's been wanting to call me that for two years.' This indicates the inherent bias and prejudice that continues to result in harassment and retaliation from the City of Manor. This behavior is on police body cam footage. I therefore request that the Manor Municipal Court open a docket, assign a neutral judge, and consider this complaint for prosecution and jury trial as provided for Class C misdemeanors.

**UNSWORN DECLARATION**

"I declare under penalty of perjury that the foregoing is true and correct."

Executed in Manor, Travis County, Texas, on this 3rd day of November, 2025.

_____

**Robert Edward Battaile,** Complainant and Affiant

5202 E Eggleston St Unit B

Manor TX 78653

robert@manortx.us 512-662-2955

**REQUEST FOR RECUSAL OF JUDGE CABALLERO**

SUBMITTED TO THE HONORABLE MUNICIPAL COURT OF MANOR, TEXAS, FOR DOCKETING AND REVIEW:

Complainant and Affiant Robert Edward Battaile respectfully requests that **Judge Caballero** be recused from any proceedings in this matter for the following reasons:

1.

   Judge Caballero previously presided over related proceedings involving the same facts and parties and failed to take timely action or enter orders reflecting review of Plaintiff's evidence. For this reason, and because the Manor Municipal Court is a "court of non-record;" as for purposes of judicial economy and to limit parties time and inconvenience, Claimant moved their case again him to the Travis County. Travis County refuses thus far to even set a trial date or bring charges over nearly a year of delay.

2. Such prior involvement creates at minimum an appearance of bias and potential

prejudice contrary to Canon 3(C) of the Texas Code of Judicial Conduct.

3. To maintain public confidence in the integrity of the Municipal Court, Complainant requests that the case be reassigned to Manor Court **Judge Ciara Parks** or, if both local judges are conflicted, to a **visiting judge** appointed under Tex. Gov't Code § 29.012.

Texas courts have long held that judicial recusal is required where impartiality might reasonably be questioned. See *Sun Exploration & Production Co. v. Jackson*, 783 S.W.2d 202 (Tex. 1989); *Klepper v. State*, 520 S.W.2d 761 (Tex. Crim. App. 1975).

Respectfully submitted this 3rd day of November, 2025.

**Robert Edward Battaile**

Complainant and Affiant

**REQUEST FOR INDEPENDENT PROSECUTOR DUE TO CONFLICT OF INTEREST**

Complainant and Affiant Robert Edward Battaile respectfully requests the appointment of an **independent prosecutor**, showing:

1.

The City Attorneys currently represent the Respondents (Manager and Secretary) in their official capacities.

2.

They thus possess a direct conflict of interest under Tex. Disciplinary Rule 1.06 and cannot ethically review or prosecute this complaint.

3.

To protect the integrity of the proceedings and avoid appearance of partiality, the Court should appoint either the Travis County Attorney's Office or another qualified independent attorney to act as special prosecutor under Tex. Gov't Code § 29.003 and Tex. Code Crim. Proc. Art. 2.07.

The importance of an impartial prosecutor is well established. See *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex. Crim. App. 1990) (courts have inherent power to appoint attorney pro tem to avoid conflict of interest); *Landers v. State*, 256 S.W.3d 295 (Tex. Crim. App. 2008) (ethical conflicts undermine prosecutorial legitimacy).

**WHEREFORE**, Complainant prays that the Court: - Grant this Request and recuse the City Attorneys;

- Appoint an independent prosecutor; and

- Grant such other and further relief as is just and proper.

**Robert Edward Battaile**

Complainant and Affiant

**CERTIFICATE OF SERVICE & VERIFICATION**

I certify that a true and correct copy of this Complaint Package was delivered on

_____ 2025 to the City Attorney for the City of Manor (by email to

legal@knightlawfirm.com and citysecretary@cityofmanor.org) and to the Office of the

City Manager.

"I declare under penalty of perjury that the foregoing certificate is true and correct."

Executed in Manor, Texas this ___ day of _____ 2025.

**Robert Edward Battaile**

Complainant and Affiant

**EXHIBIT F.**

**IN THE MUNICIPAL COURT OF THE CITY OF MANOR, TEXAS**

**COMPLAINT PACKAGE – DISORDERLY CONDUCT**

**& RELATED OFFENSES.**

**COVER / FILING SHEET**

**Complainant and Affiant:**

Robert Edward Battaile

502 E Eggleston St., Unit B

Manor, TX 78653

robert@manortx.us • 512-662-2955

**Respondents:**

1. Leslie Moore – City Manager

2. Lluvia Almaraz – City Secretary

**Accompanying Filings:**

- Exhibit A – Unsworn Criminal Complaint (Narrative)

- Request for Recusal of Judge Caballero

- Request for Independent Prosecutor Due to Conflict of Interest

- Certificate of Service & Verification

**Purpose:**

To initiate Class C Misdemeanor proceedings for Disorderly Conduct arising from official misconduct on August 19, 2025, and to ensure the complaint is reviewed by an impartial judge and prosecutor, free of conflicts of interest. This filing is made under the citizen-complaint authority recognized in **Tex. Code Crim. Proc. art. 2.01** and **art. 45.019(a)(1)**, which permit any credible person to bring facts of an offense before a magistrate or municipal court for review. See also *State v. Stone*, 919 S.W.2d 424 (Tex. Crim. App. 1996) (citizen complaint sufficient to commence prosecution when sworn to before proper authority).

**EXHIBIT A – UNSWORN CRIMINAL COMPLAINT (NARRATIVE)**

STATE OF TEXAS §

CITY OF MANOR §


**UNSWORN DECLARATION OF ROBERT EDWARD BATTAILE**

*(Complainant and Affiant)*


My name is **Robert Edward Battaile**. My address is 502 E Eggleston St., Unit B, Manor, Texas 78653. I am over 18 years of age and competent to make this declaration.

7. On **August 19, 2025**, the final day for candidates to file for the November City Council election, I was lawfully present and communicating with **City Secretary Lluvia Almaraz** and **City Manager Leslie Moore** at **Manor City Hall**, 105 E Eggleston Street. Earlier that day I had telephoned Ms. Almaraz to make an appointment for **Mr. Bobby Reese**, a 22-year U.S. Army veteran and long-time Manor resident, to come in and complete his council-candidate paperwork before the statutory filing deadline.

8. When Mr. Reese and I arrived, City officials refused to provide him the necessary forms or accept his filing. Ms. Almaraz never took a written application or presented Mr. Reese with the Candidate Handbook. Further, she claimed he

was ineligible due to his "suspended" Voter Registration. That's incorrect. Further, she never provided a written reason for his rejection. When Mr. Reese and Battaile returned after the first rejection, Mr. Moore said words to the effect that "it doesn't matter now, it's too late to apply" ~ yet it was only 2:00. The City's own Candidate Handbook says clearly that candidates have until 5:00 pm to apply. Upon learning of this additional false claim, Battaile walked back in calmly and showed Moore the page in said Handbook with the end time circled.

Battaile expressed himself and Mr. Moore and Mrs. Almaraz over-reacted due to their crimes being exposed by a person with the courage to expose said crimes of Election Coercion by preventing a candidate his rightful place on the ballot contrary to their "duty" to hold free and fair elections. Apparently, Moore summoned the **Manor Police**. No disturbance existed until the City Manager and City Secretary acted outside their authority and contrary to Manor Personnel policies and legal restraints. Battaile and Reese were acting within our lawful right to participate in the election process.

9.    The deliberate decision by Ms. Moore and Ms. Almaraz behavior and subsequent decision to call in police officers under these circumstances created the only disorderly conduct present that day. Battaile's freedom of speech has been re-affirmed in other City of Manor retaliatory arrests. On Aug. 19, the City Manager and City Secretary's actions obstructed a citizen's ballot access and

criminalized lawful speech. Such conduct constitutes **Disorderly Conduct** under **Texas Penal Code § 42.01(a)(4) and (8)**, and amounts to **Official Oppression and Abuse of Official Capacity** under **§§ 39.02–39.03**, by knowingly misusing governmental authority to deprive Mr. Reese and me of rights secured by law.

10. This incident is the same factual event later used by the City to justify issuing a citation against me. The identical evidence demonstrating my innocence equally demonstrates the Respondents' wrongdoing.

11. Although later claiming they were 'afraid' of Mr. Battaile, the two came out from behind the protected glass wall area to confront the Claimant. Mr. Moore attempted to intimidate by standing over Mr. Battaile in close proximity in a threatening way; and continued to stand there blocking Claimant's peaceful exit. Ms. Almaraz "chased" Claimant out of the lobby yelling at him and calling him a 'racist' while keeping a Black man off the ballot illegally. This behavior is confirmed by security camera footage from the City Hall Lobby cameras. The only people "yelling" were the City Manager and City Secretary.

12. When police arrived, Moore said he had to 'use lots of self control' and otherwise 'it wouldn't have been pretty' [implying he would have used violence against Claimant] and then said about the Claimant that 'he's been wanting to call me that for two years.' This indicates the inherent bias and prejudice that continues to result in harassment and retaliation from the City of Manor. This

behavior is on police body cam footage. I therefore request that the Manor Municipal Court open a docket, assign a neutral judge, and consider this complaint for prosecution and jury trial as provided for Class C misdemeanors.

**UNSWORN DECLARATION**

"I declare under penalty of perjury that the foregoing is true and correct."

Executed in Manor, Travis County, Texas, on this 3rd day of November, 2025.

_____

**Robert Edward Battaile,** Complainant and Affiant

5202 E Eggleston St Unit B

Manor TX 78653

robert@manortx.us 512-662-2955

**REQUEST FOR RECUSAL OF JUDGE CABALLERO**

SUBMITTED TO THE HONORABLE MUNICIPAL COURT OF MANOR, TEXAS, FOR DOCKETING AND REVIEW:

Complainant and Affiant Robert Edward Battaile respectfully requests that **Judge Caballero** be recused from any proceedings in this matter for the following reasons:

4.

Judge Caballero previously presided over related proceedings involving the same facts and parties and failed to take timely action or enter orders reflecting review of Plaintiff's evidence. For this reason, and because the Manor Municipal Court is a "court of non-record;" as for purposes of judicial economy and to limit parties time and inconvenience, Claimant moved their case again him to the Travis County. Travis County refuses thus far to even set a trial date or bring charges over nearly a year of delay.

5.

Such prior involvement creates at minimum an appearance of bias and potential prejudice contrary to Canon 3(C) of the Texas Code of Judicial Conduct.

6.

15-25-001420CV

To maintain public confidence in the integrity of the Municipal Court, Complainant requests that the case be reassigned to Manor Court **Judge Ciara Parks** or, if both local judges are conflicted, to a **visiting judge** appointed under Tex. Gov't Code § 29.012.

Texas courts have long held that judicial recusal is required where impartiality might reasonably be questioned. See *Sun Exploration & Production Co. v. Jackson*, 783 S.W.2d 202 (Tex. 1989); *Klepper v. State*, 520 S.W.2d 761 (Tex. Crim. App. 1975).

Respectfully submitted this 3rd day of November, 2025.

**Robert Edward Battaile**

Complainant and Affiant

**REQUEST FOR INDEPENDENT PROSECUTOR DUE TO CONFLICT OF INTEREST**

Complainant and Affiant Robert Edward Battaile respectfully requests the appointment of an **independent prosecutor**, showing:

4.

The City Attorneys currently represent the Respondents (Manager and Secretary) in their official capacities.

5.

They thus possess a direct conflict of interest under Tex. Disciplinary Rule 1.06 and cannot ethically review or prosecute this complaint.

6.

To protect the integrity of the proceedings and avoid appearance of partiality, the Court should appoint either the Travis County Attorney's Office or another qualified independent attorney to act as special prosecutor under Tex. Gov't Code § 29.003 and Tex. Code Crim. Proc. Art. 2.07.

The importance of an impartial prosecutor is well established. See *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex. Crim. App. 1990) (courts have inherent power to appoint attorney pro tem to avoid conflict of interest); *Landers v. State*, 256 S.W.3d 295 (Tex. Crim. App. 2008) (ethical conflicts undermine prosecutorial legitimacy).

**WHEREFORE**, Complainant prays that the Court: - Grant this Request and recuse the City Attorneys;

- Appoint an independent prosecutor; and

- Grant such other and further relief as is just and proper.


**Robert Edward Battaile**

Complainant and Affiant


## CERTIFICATE OF SERVICE & VERIFICATION


I certify that a true and correct copy of this Complaint Package was delivered on _____ 2025 to the City Attorney for the City of Manor (by email to legal@knightlawfirm.com and citysecretary@cityofmanor.org) and to the Office of the City Manager.


"I declare under penalty of perjury that the foregoing certificate is true and correct."


Executed in Manor, Texas this ___ day of _____ 2025.

**Robert Edward Battaile**

Complainant and Affiant

**IN THE MUNICIPAL COURT OF THE CITY OF MANOR, TEXAS**

**COMPLAINT PACKAGE – DISORDERLY CONDUCT & RELATED OFFENSES.**

**COVER / FILING SHEET**

**Complainant and Affiant:**

Robert Edward Battaile

502 E Eggleston St., Unit B

Manor, TX 78653

robert@manortx.us • 512-662-2955

**Respondents:**

1. Leslie Moore – City Manager

2. Lluvia Almaraz – City Secretary

**Accompanying Filings:**

- Exhibit A – Unsworn Criminal Complaint (Narrative)

- Request for Recusal of Judge Caballero

- Request for Independent Prosecutor Due to Conflict of Interest

- Certificate of Service & Verification

**Purpose:**

To initiate Class C Misdemeanor proceedings for Disorderly Conduct arising from official misconduct on August 19, 2025, and to ensure the complaint is reviewed by an impartial judge and prosecutor, free of conflicts of interest. This filing is made under the citizen-complaint authority recognized in **Tex. Code Crim. Proc. art. 2.01** and **art. 45.019(a)(1)**, which permit any credible person to bring facts of an offense before a magistrate or municipal court for review. See also *State v. Stone*, 919 S.W.2d 424 (Tex. Crim. App. 1996) (citizen complaint sufficient to commence prosecution when sworn to before proper authority).

**EXHIBIT A – UNSWORN CRIMINAL COMPLAINT (NARRATIVE)**

STATE OF TEXAS §

CITY OF MANOR §

**UNSWORN DECLARATION OF ROBERT EDWARD BATTAILE**

*(Complainant and Affiant)*

My name is **Robert Edward Battaile**. My address is 502 E Eggleston St., Unit B, Manor, Texas 78653. I am over 18 years of age and competent to make this declaration.

13. On **August 19, 2025**, the final day for candidates to file for the November City Council election, I was lawfully present and communicating with **City Secretary Lluvia Almaraz** and **City Manager Leslie Moore** at **Manor City Hall**, 105 E Eggleston Street. Earlier that day I had telephoned Ms. Almaraz to make an appointment for **Mr. Bobby Reese**, a 22-year U.S. Army veteran and long-time Manor resident, to come in and complete his council-candidate paperwork before the statutory filing deadline.

14. When Mr. Reese and I arrived, City officials refused to provide him the necessary forms or accept his filing. Ms. Almaraz never took a written application or presented Mr. Reese with the Candidate Handbook. Further, she claimed he

was ineligible due to his "suspended" Voter Registration. That's incorrect. Further, she never provided a written reason for his rejection. When Mr. Reese and Battaile returned after the first rejection, Mr. Moore said words to the effect that "it doesn't matter now, it's too late to apply" ~ yet it was only 2:00. The City's own Candidate Handbook says clearly that candidates have until 5:00 pm to apply. Upon learning of this additional false claim, Battaile walked back in calmly and showed Moore the page in said Handbook with the end time circled.

Battaile expressed himself and Mr. Moore and Mrs. Almaraz over-reacted due to their crimes being exposed by a person with the courage to expose said crimes of Election Coercion by preventing a candidate his rightful place on the ballot contrary to their "duty" to hold free and fair elections. Apparently, Moore summoned the **Manor Police**. No disturbance existed until the City Manager and City Secretary acted outside their authority and contrary to Manor Personnel policies and legal restraints. Battaile and Reese were acting within our lawful right to participate in the election process.

15. The deliberate decision by Ms. Moore and Ms. Almaraz behavior and subsequent decision to call in police officers under these circumstances created the only disorderly conduct present that day. Battaile's freedom of speech has been re-affirmed in other City of Manor retaliatory arrests. On Aug. 19, the City Manager and City Secretary's actions obstructed a citizen's ballot access and

criminalized lawful speech. Such conduct constitutes **Disorderly Conduct** under **Texas Penal Code § 42.01(a)(4) and (8)**, and amounts to **Official Oppression and Abuse of Official Capacity** under **§§ 39.02–39.03**, by knowingly misusing governmental authority to deprive Mr. Reese and me of rights secured by law.

16. This incident is the same factual event later used by the City to justify issuing a citation against me. The identical evidence demonstrating my innocence equally demonstrates the Respondents' wrongdoing.

17. Although later claiming they were 'afraid' of Mr. Battaile, the two came out from behind the protected glass wall area to confront the Claimant. Mr. Moore attempted to intimidate by standing over Mr. Battaile in close proximity in a threatening way; and continued to stand there blocking Claimant's peaceful exit. Ms. Almaraz "chased" Claimant out of the lobby yelling at him and calling him a 'racist' while keeping a Black man off the ballot illegally. This behavior is confirmed by security camera footage from the City Hall Lobby cameras. The only people "yelling" were the City Manager and City Secretary.

18. When police arrived, Moore said he had to 'use lots of self control' and otherwise 'it wouldn't have been pretty' [implying he would have used violence against Claimant] and then said about the Claimant that 'he's been wanting to call me that for two years.' This indicates the inherent bias and prejudice that continues to result in harassment and retaliation from the City of Manor. This

behavior is on police body cam footage. I therefore request that the Manor Municipal Court open a docket, assign a neutral judge, and consider this complaint for prosecution and jury trial as provided for Class C misdemeanors.

**UNSWORN DECLARATION**

"I declare under penalty of perjury that the foregoing is true and correct."

Executed in Manor, Travis County, Texas, on this 3rd day of November, 2025.

_____

**Robert Edward Battaile,** Complainant and Affiant

5202 E Eggleston St Unit B

Manor TX 78653

robert@manortx.us 512-662-2955

**REQUEST FOR RECUSAL OF JUDGE CABALLERO**

SUBMITTED TO THE HONORABLE MUNICIPAL COURT OF MANOR, TEXAS, FOR DOCKETING AND REVIEW:

Complainant and Affiant Robert Edward Battaile respectfully requests that **Judge Caballero** be recused from any proceedings in this matter for the following reasons:

7.

Judge Caballero previously presided over related proceedings involving the same facts and parties and failed to take timely action or enter orders reflecting review of Plaintiff's evidence. For this reason, and because the Manor Municipal Court is a "court of non-record;" as for purposes of judicial economy and to limit parties time and inconvenience, Claimant moved their case again him to the Travis County. Travis County refuses thus far to even set a trial date or bring charges over nearly a year of delay.

8.

Such prior involvement creates at minimum an appearance of bias and potential prejudice contrary to Canon 3(C) of the Texas Code of Judicial Conduct.

9.

To maintain public confidence in the integrity of the Municipal Court, Complainant requests that the case be reassigned to Manor Court **Judge Ciara Parks** or, if both local judges are conflicted, to a **visiting judge** appointed under Tex. Gov't Code § 29.012.

Texas courts have long held that judicial recusal is required where impartiality might reasonably be questioned. See *Sun Exploration & Production Co. v. Jackson*, 783 S.W.2d 202 (Tex. 1989); *Klepper v. State*, 520 S.W.2d 761 (Tex. Crim. App. 1975).

Respectfully submitted this 3rd day of November, 2025.

**Robert Edward Battaile**

Complainant and Affiant

**REQUEST FOR INDEPENDENT PROSECUTOR DUE TO CONFLICT OF INTEREST**

Complainant and Affiant Robert Edward Battaile respectfully requests the appointment of an **independent prosecutor**, showing:

7.

The City Attorneys currently represent the Respondents (Manager and Secretary) in their official capacities.

8.

They thus possess a direct conflict of interest under Tex. Disciplinary Rule 1.06 and cannot ethically review or prosecute this complaint.

9.

To protect the integrity of the proceedings and avoid appearance of partiality, the Court should appoint either the Travis County Attorney's Office or another qualified independent attorney to act as special prosecutor under Tex. Gov't Code § 29.003 and Tex. Code Crim. Proc. Art. 2.07.

The importance of an impartial prosecutor is well established. See *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex. Crim. App. 1990) (courts have inherent power to appoint attorney pro tem to avoid conflict of interest); *Landers v. State*, 256 S.W.3d 295 (Tex. Crim. App. 2008) (ethical conflicts undermine prosecutorial legitimacy).

**WHEREFORE**, Complainant prays that the Court: - Grant this Request and recuse the City Attorneys;

- Appoint an independent prosecutor; and

- Grant such other and further relief as is just and proper.

**Robert Edward Battaile**

Complainant and Affiant

**CERTIFICATE OF SERVICE & VERIFICATION**

I certify that a true and correct copy of this Complaint Package was delivered on _____ 2025 to the City Attorney for the City of Manor (by email to legal@knightlawfirm.com and citysecretary@cityofmanor.org) and to the Office of the City Manager.

"I declare under penalty of perjury that the foregoing certificate is true and correct."

Executed in Manor, Texas this ___ day of _____ 2025.

**Robert Edward Battaile**

Complainant and Affiant

**EXHIBIT G.**

The unrecorded Charter Review Commission meetings are the focus of the Supplement to the Petition for Mandamus to RESET the process. The Charter is our "Constitutional Convention" that only happens in full, once every five years. Not only the public; but several commission members themselves have no record to review from the first four of five total meetings.



15-25-001420CV

**EXHIBIT H.**

**COMPLAINT – OFFICIAL OPPRESSION (ATTEMPTED)**

City of Manor Municipal Court

**COMPLAINANT:**

Robert Edward Battaile

502 E Eggleston St., Unit B - Manor, TX 78653

512-662-2955 robert@manortx.us

**RESPONDENT:**

Lluvia Almaraz, City Secretary, City of Manor

**I. JURISDICTIONAL STATEMENT**

This Complaint concerns conduct occurring within the City of Manor and alleges Class C–level Official Misconduct / Official Oppression (attempted)—namely, an unlawful interference with rights granted under the Texas Open Meetings Act, carried out knowingly, intentionally, publicly, and beyond the legal authority of the City Secretary. This Complaint does not allege felony or Class A/B offenses and is properly before the Manor Municipal Court.

**II. FACTUAL BACKGROUND**

On Thursday, Nov. 13, 2025, I attended a public meeting of the Manor Charter Review Commission, as permitted under the Texas Open Meetings Act ("TOMA").

The meeting was:

- •not recorded,

- •not livestreamed, and

- •no official record was made,

despite the Commission drafting proposed amendments to the City Charter.

Because the City has thus far failed to record ANY of the four publicly-held and mandated Charter Review meetings, I made a respectful and lawful request to obtain access to the room's public-address (PA) audio feed so I could create a clear, non-disruptive recording—a right expressly protected under Tex. Gov't Code § 551.023.

## III. CONDUCT OF RESPONDENT

During my attempt to make that request, City Secretary Lluvia Almaraz:

1. **Rudely interrupted**

She cut off my question to staff member Brittany Lopez, declaring:

"We don't do that in Manor." I replied that other cities provide audio.

2. **Approached me to repeat a false claim**

A few minutes later, she crossed the room and loudly stated: "NO other cities do this!"

This statement is objectively false.

3. **Publicly mocked me**

When I noted that cities provide news feeds and that I publish a public newsletter, stating "I'm a newspaper," she loudly mocked me: "You're NOT a newspaper."

4. **Intimidation**

Her tone, volume, and body language were intended to embarrass, intimidate, chill my lawful TOMA rights, and discourage my participation – also violates Personnel Manual.

5. **Interference with protected rights**

Her statements were false, misleading, and calculated to interfere with my ability to record an open meeting and obtain intelligible audio of the proceedings.

**IV. TOMA RIGHTS VIOLATION**

Tex. Gov't Code § 551.023 provides: "A person in attendance may record all or any part of an open meeting of a governmental body by means of a recorder, video camera, or other device."

Section 551.023(b) further states that any rules adopted by the governmental body "may not prevent or unreasonably impair" a person from exercising this right.

At the Charter Review Commission meeting, the ONLY intelligible audio in the room came through microphones and the amplified public-address system controlled by staff. Without access to that audio, any citizen recording captures muffled, unintelligible speech that is functionally and legally useless. Because the City:

- •makes no official recording,

- •provides no livestream,

- •offers no audio alternative, and

- •relies entirely on amplified microphones,

therefore, refusing access to the PA output—the only source of clear speech—

**unreasonably impairs the statutory right to record under § 551.023(b)**.

A governmental body cannot place public deliberation behind amplification

equipment it exclusively controls and then deny citizens the only practical means to

capture intelligible dialogue.

Ms. Almaraz's statements ("We don't do that in Manor," "NO other cities do this,"

"You're not a newspaper") were contrary to § 551.023, outside her legal authority, and

calculated to interfere with, discourage, or prevent the exercise of a lawful right.

## V. PRIOR RETALIATION CONTEXT (RELEVANT TO INTENT)

This incident is not isolated.

Previously, I was the victim of:

- •a false report made by Ms. Almaraz to Manor PD,

- •a false affidavit submitted to a magistrate in a court of no record,

- •resulting in my arrest,

- •$8,000 bail (two $4,000 bonds due to additional false allegations by the City

  Manager),

- •speech restrictions, and

- •a 600-foot stay-away order from the same officials that harmed my candidacy for

  Mayor of Manor, and Complainant wishes to further note that all "Harassment"

  charges were later dismissed as baseless and lacking sufficient evidence.

This demonstrates intent, pattern, and retaliatory motive against my protected civic activities, citizen journalism, and candidacy.

## VI. CLASS C MISDEMEANOR ALLEGATION

I allege that the Respondent's conduct constitutes:

**Attempted Official Oppression (Class C level)**

Tex. Penal Code § 39.03 (attempted misuse of official authority resulting in interference with a protected right).

Specifically:

- •Knowingly misusing her position,

- •Interfering with a statutory right,

- •Acting under color of office,

- •Without legal authority.

Municipal Court has jurisdiction over Class C attempted offenses involving unauthorized exercise of official power interfering with a right.

It is well known to City staff that Complainant is an A/V Professional with many years experience and his own Multi-media Production company, Calexas Inc. Virtually all public address systems have "audio out" connections readily accessible for this purpose.

## VII. REQUEST FOR ACTION

I request:

1.That this Complaint be accepted and docketed.

2. That a new prosecutor be appointed, because the Knights Law Firm / Barbara Boulware-Wells advises the City Secretary and cannot ethically prosecute her own client.

3. That Judge Caballero be recused for prior involvement with the same individuals in matters tied to my earlier wrongful arrest. Case is before Travis County not yet charged in 14 months.

4. Absent any meaningful administrative or disciplinary penalty for this conduct, I hereby request that this matter be heard before a jury, as is my right in Class C misdemeanor cases. Witnesses in the room included, Citizen, Bobby Reese; Commissioner, Julie Leonard, and the other three Commissioners present.

## VIII. UNSWORN DECLARATION

Unsworn Declaration Under Penalty of Perjury

(Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Robert Edward Battaile, date of birth August 14, 1950.

My address is 502 E Eggleston St., Unit B, Manor, Texas 78653. I declare under penalty of perjury that the facts stated in this Complaint are true and correct.

Executed on this 14th day of November, 2025.

_____

Robert Edward Battaile, Complainant

Closing Context and Community Transparency Statement

The City Secretary's public remark—"you're not a newspaper"—was inappropriate, inaccurate, and directly contrary to the City of Manor Personnel Policies Manual, which requires City staff to treat members of the public with respect, courtesy, and professionalism, and expressly prohibits conduct that could be perceived as intimidating, belittling, retaliatory, or disrespectful toward citizens participating in governmental processes. The Manual does not distinguish among types of citizens, professions, or community roles. It requires respectful treatment of all members of the public.

I publish a widely distributed community newsletter that reaches a broad cross-section of Manor's civic landscape, including individual residents, local businesses, the Manor Police Department, ManorISD personnel, church leaders, Chamber of Commerce members, County Commissioners, state legislators, Attorney General personnel, surrounding city mayors, and members of the state and national media. It is a legitimate form of public communication and civic participation, regardless of whether the City Secretary personally approves of it.

In a small town, transparency is not theoretical—it is communal. Everyone knows that everyone else sees the same information. Attempts to misstate the law, restrict recording rights, or publicly mock a citizen do not remain hidden. The City's ongoing failure to record or livestream critical public meetings—City Council, Planning & Zoning, and the Charter Review Commission—has made independent public documentation not only

15-25-001420CV

lawful but essential.

As a standard and ethical communication practice, I use CC fields for open civic visibility and BCC fields only when appropriate to protect community members from potential retaliation. This is not "manipulation"; it is transparency and safety. In Manor, visibility among institutions fosters accountability. It ensures that no public official can credibly claim that misconduct occurred privately or without witnesses.

This context underscores why the City Secretary's mocking comment was particularly improper: not only did it contradict Texas law (Tex. Gov't Code § 551.023 guaranteeing my right to record), it also violated her own professional obligations under the Personnel Manual to treat citizens with dignity and to avoid any appearance of hostility, retaliation, or disrespect.

This Complaint is filed so that these standards are upheld, and so that Manor residents can continue participating in their government without fear of mistreatment, belittlement, or unlawful interference with their right to at least hear clearly what transpires at Public Meetings.

Cc: Phil Green, IT Director, City of Manor

**EXHIBIT I. 1.**

For the fourth time in a row, the City of Manor convened its Charter Review Commission in complete secrecy—**no livestream, no audio, no video, no record of any kind**—despite possessing the very equipment used daily to broadcast every other meeting type. I witnessed not only the City's deliberate refusal to provide an audio feed or to document the proceedings but also the unprofessional, hostile conduct of City Secretary Lluvia Almaraz, who publicly confronted and disparaged me when I questioned this secrecy and lack of intelligible audio. This pattern of behavior, combined with the absence of any official record, undermines public trust, violates the City's Personnel Manual and Ethics Code, and destroys the integrity required for a commission tasked with rewriting Manor's governing Charter.

The inclusion of an ETHICS COMMISSION on the City Organization Chart is complete PROPAGANDA and deception. City Manager has **gone rogue** and become an untethered corrupt city official apparently now in love with and beholden to... Scott Dunlop. My "official" Ethics Commission complaint follows herewith:

---

**Attn: Leslie Moore, City of Manor City Manager**

**ETHICS COMMISSION COMPLAINT**

**Secret Charter Review Commission Meetings, Retaliatory Conduct by the City**

**Secretary, and Systemic Transparency Violations**

**Unsworn Declaration of Robert Edward Battaile**

I, Robert Edward Battaile, submit this Ethics Complaint against City Secretary Lluvia Almaraz, Assistant City Manager Brittany Lopez, and supervisory officials responsible for the conduct, operation, and record-keeping of the Charter Review Commission (CRC).

This complaint concerns deliberate secrecy, public intimidation, and retaliatory conduct in violation of the Personnel Manual, Manor's Ethics Code, and constitutional guarantees of transparency.

## 1. Four Consecutive Secret Charter Review Commission Meetings

The Charter Review Commission has now held FOUR meetings — all without livestream, without audio, without video, without AV recording, and without the archived public record the City routinely provides for every other board, commission, and council meeting.

Manor boasts a state-of-the-art audiovisual system, and

- City Council meetings

- P&Z meetings

- Budget workshops

- Public hearings

are routinely live-streamed, recorded, and archived permanently.

Yet the Charter Review Commission, the body entrusted with rewriting the Constitution of the City, has been kept entirely off the record.

This is not a glitch — it is policy-level secrecy.

## 2. Proof the Lack of Recording Harms Governance Itself

At the most recent meeting, one CRC Commissioner, Shervonne James openly admitted to the group that she had no idea what was decided at the previous meeting. They had no record to review because the City intentionally produced NONE.

As a result:

•Commissioners wasted significant meeting time

•Other commissioners had to verbally reconstruct past decisions

•No citizen could meaningfully follow the process

•No accountability exists for statements, advice, or votes

**A City that claims to support "good governance" cannot operate this way.**

If even a Commissioner cannot follow past proceedings, how can the public, press, or courts? Further, the city has NO MEANS for a citizen to email the Commissioners. Thus, the city's actions ***pro-actively*** <u>discourage</u> citizen input and engagement.

**3. I Was the ONLY Citizen Present at the last meeting; and one of two citizens at this last meeting— Because the City Made Public Access Impossible unless you attended in person. Further, <u>No Agenda comments</u> were allowed at the meeting. The city:**

- Provided no livestream

- Provided no recording

- Provided no public notice that the meeting would not be broadcast

- Intentionally created barriers that prevent citizens from monitoring the proceedings

This violates both the spirit and intent of:

- Texas Constitution Art. I § 8 (open discourse)

- Art. I § 27 (petition clause)

- Open Meetings principles requiring meaningful access to proceedings

*When a city secretly revises its Charter — the very document defining the limits of government power — the public's trust collapses.*

**4. Retaliatory Incident with City Secretary Lluvia Almaraz**

At this same meeting, I asked Asst. City Secretary, Brittany Lopez a standard transparency question: **"**Can I get an audio feed of these meetings?"

Before Assistant City Secretary, Lopez could respond, City Secretary Lluvia Almaraz loudly and rudely interrupted: "No. We don't do that in Manor"

I noted that "lots of cities do," and returned to my camera on the other side of the room. A few moments later, Almaraz crossed the room in an aggressive posture and declared loudly: **"**NO other cities do that." To which I replied, "Lots of cities provide a news feed. I'm a newspaper."

Almaraz responded — loudly, disparagingly: **"You're NOT a newspaper."**

I replied: **"My circulation is bigger than the Manor Journal."**

This was witnessed by:

> •Commissioner Julie Leonard, whose shocked expression confirmed the misconduct; the other 3 commissioners and

> •Bobby Reese, who also witnessed the inappropriate and uninvited exchange

This was textbook intimidation and in direct violation of the Personnel Manual's requirement that staff:

• Treat citizens with courtesy

• Avoid intimidation or disparagement

• Maintain professional decorum

• Support public access and transparency

**Complainant notes that:** It was Battaile's email Newsletters published about her alleged Election Coercion that led her to make a false police report that resulted in my arrest and coercive bail restrictions that negatively impacted my run for Mayor in 2024. For her to now claim that I'm "not a newspaper" is wishful thinking at best.

**5. Violations of the Manor Ethics Code**

Manor Ethics Code § 12.02.032 prohibits:

**(a) Misuse of Public Office**

**(b) Abuse of Position**

**(c) Disrespect toward citizens**

**(d) Retaliation against critics or whistleblowers**

The secrecy around the Charter Review Commission and Ms. Almaraz's retaliatory confrontation constitute all four. The City cannot selectively turn off accountability for the committee rewriting its Charter.

**6. The Law: The City Manager MUST Convene the Ethics Commission**

Manor Code of Ordinances § 12.02.041 is mandatory:

**"**Upon receipt of a written ethics complaint, the City Manager SHALL convene the Ethics Commission and the Commission SHALL hear the complaint."

Not optional.

Not conditional.

Not discretionary.

If the City Manager fails to convene the Ethics Commission over this complaint, that itself is a separate ethics violation and a due process violation under the Texas Constitution.

**7. Constitutional Challenge — Manor's Ethics Commission Cannot Be Impartial**

This complaint highlights a deeper structural defect:

**The Ethics Commission is appointed by the Mayor and Council — the very officials who are accused of wrongdoing.**

This makes impartial review impossible and violates:

- •Texas Constitution Art. I § 19

- •U.S. Constitution, Fourteenth Amendment

- •Ward v. Monroeville

- •Tumey v. Ohio

***A tribunal cannot be impartial if the accused appoints the judges.***

Because of this: I intend to challenge the constitutionality of Manor's Ethics Commission structure in my ongoing litigation.

## 8. Requested Reform

I request that the City adopt an independent Ethics Commission appointment system, such as:

A. Appointment by outside municipal attorneys

from Elgin, Pflugerville, Taylor, Austin, etc.

B. Appointment of a Special Master by the Fifteenth Court of Appeals

to oversee ethics matters until Manor reforms its system.

C. Randomized selection from qualified citizen applicants

rather than mayoral, council or city manager appointment.

D. Election by the Voters.

## RELIEF REQUESTED

I request that:

1. City Manager immediately convene the Ethics Commission as required by law.

2. The Commission hear this complaint and issue findings.

3. The Commission sanction or reprimand the responsible officials.

4. City create permanent recordings of all Charter Review Commission meetings.

5. City adopt an independent appointment structure for the Ethics Commission.

6. This matter be included as evidence of systemic retaliation and secrecy in future litigation.

## UNSWORN DECLARATION

(Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Robert Edward Battaile, my date of birth is Jaugust 14, 1950, and I live at 502 E Eggleston St., Unit B, Manor, Texas 78653. My email address is robert@manortx.us, and my telephone number is 512-662-2955.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of November, 2025, in Manor, Texas.

_____/s/_____

Robert Edward Battaile, Complainant Pro Se

**EXHIBIT I.2.**

Demand to Activate Ethics Commission + File Ethics Complaint

September 30, 2025

To: Mayor, Dr. CJ Harvey; City Council, City of Manor

Cc: City Secretary Lluvia Almaraz (Officer for Public Information); City Manager Scott Moore; City Attorney, Knights Law Firm

Subject: Immediate Activation of Ethics Commission; Filing & Docketing of Ethics Complaint (Manor Cemetery GPR & Budget Ledger)

Honorable Mayor and Council:

I hereby file a sworn Ethics Complaint under the City's established Ethics Commission framework. The City's own policy describes a five-member Commission empowered to receive complaints, investigate, issue and enforce subpoenas, issue written opinions, reprimands/admonishments, and recommend removal/termination or referral for civil/criminal action, advised by independent legal counsel. All five seats are presently vacant, which has wrongfully blocked access to the City's ethics remedy.

Demand for Immediate Action

1. Appoint five commissioners at the next regular meeting or a special meeting within 14 days and identify the independent legal counsel who will advise the Commission.

2. Docket my complaint at the Commission's first meeting and set a prompt, public hearing date.

3. Acknowledge receipt of this complaint and placement on the next Council agenda within 3 business days.

Authority & Trigger (Ethics Commission)

• City of Manor Home-Rule Charter, Article XII (Ethics Code): "an ethics commission composed of a minimum of five qualified voters of the city shall be established," and the commission "shall be advised by independent legal counsel nominated by the city attorney and appointed by the council."

• City policy (Ethics Commission page/description): the Commission "shall meet upon a complaint or grievance being filed" or at the request of the Council or City Manager. I have filed such a complaint; Council should appoint all five members and docket this matter for hearing at the first meeting.

Statutory Records Deadline Already Missed

The City's 10-business-day deadline under Texas Government Code §552.301 to either produce the requested records or seek an Attorney General ruling has already expired. Under §552.302, the information is now **presumptively public** and any asserted exceptions are **waived** absent a compelling demonstration. This missed deadline and the implausible "no responsive records" responses are central to this ethics complaint.

Ethics Complaint (Summary)

- Subject: Withholding/obfuscation of public records related to the Ground Penetrating Radar (GPR) survey of Manor Cemetery, and the associated budget account/ledger documenting an expenditure of approximately $32,500.

- Respondents: City Manager Scott Moore; City Secretary Lluvia Almaraz; Mayor [Harvey full name]; and any other officials or employees responsible for processing the requests.

- Conduct: After my written request and payment ($18), the City produced only an aerial image and asserted "no responsive records" for the GPR deliverables and the account/ledger funding the expense. For an expenditure of this magnitude, that assertion is implausible and violates basic standards of transparency and ethics.

- Relief Requested: Investigation; issuance of subpoenas as needed; written findings and opinion; appropriate reprimand/admonishment; recommendations for removal/termination where warranted; and referral for civil/criminal action as appropriate.

Enclosures: Exhibit A–C (correspondence & City responses); copy of original request & receipt.

Respectfully,

Robert Edward Battaile

502 E Eggleston St Unit B, Manor TX 78653

Phone: [512-662-2955 • Email: Robert@ManorTX.us

Litigation Hold & Personal-Capacity Notice – Manor Cemetery GPR

Records and Funding Account

September 30, 2025

To: City Manager Scott Moore; City Secretary Lluvia Almaraz (Officer for Public

Information); Mayor [Harvey full name]; City Attorney [Name]

Subject: Litigation Hold & Personal-Capacity Notice – Manor Cemetery GPR Records

and Funding Account

This letter imposes a litigation hold and serves as final demand under the Texas

Public Information Act (PIA) and related criminal statutes.

For clarity: the Charter establishes the Ethics Commission and requires independent

legal counsel; the City's policy states the Commission shall meet upon a complaint

being filed.

Missed Statutory Deadline (PIA)

The City's 10-business-day response deadline in Gov't Code §552.301 has passed.

Under §552.302, the requested information is now presumptively public and any

exceptions are waived absent a compelling reason. Immediate production is

required.

Preservation Duty (Effective Immediately)

Preserve all records related to the Manor Cemetery GPR work, including but not

limited to: contracts, scopes, work orders, invoices, vendor emails, internal emails/texts, drafts, maps/reports/data (PDFs, shapefiles, GeoTIFFs), and finance records (account number(s), ledger entries, date, amount, vendor, description) documenting the approximately $32,500 disbursement and approval (agendas/minutes/resolutions).

Production Demand (Time-Sensitive)

Produce, by Friday, October 3, 2025 (5:00 p.m. CT):

1) The complete GPR deliverables (final map(s), report(s), and underlying data)

2) The budget account number(s) and ledger entries showing the disbursement (including fund, department, object code, date, amount, payee, and description), plus the authorizing agenda/minutes/contract/PO.

If you assert any exception, you must request an Attorney General ruling under Government Code §552.301 and identify each claimed exception by the statutory deadline. "No responsive records" for a paid municipal project and its ledger is facially deficient.

Personal-Capacity Exposure (Notice)

Individuals may incur criminal and civil liability for unlawful handling of public information, including:

- Government Code §§552.351–.353 (destruction/concealment; refusal/failure to provide access by the officer for public information or agent).

15-25-001420CV

- Penal Code §37.10 (tampering with a governmental record).

- Penal Code §39.02 (abuse of official capacity – misuse of govt property/svcs).

All rights are reserved to pursue mandamus, fees, and personal-capacity claims supported by the evidence.

Failure to comply by Friday, October 3, 2025 will trigger: (a) a §552.3215 complaint to the Travis County Public Integrity unit and the OAG Open Records Division; (b) a mandamus action; and (c) filing of the enclosed Ethics Complaint with demand that Council immediately activate the Ethics Commission.

Respectfully,

Robert Edward Battaile

502 E Eggleston St Unit B, Manor TX 78653

Phone: 512-662-2955 robert@manortx.us

Verification – Unsworn Declaration

September 30, 2025

My name is Robert Edward Battaile. My date of birth is 8-14-1950 and my address is 502 E Eggleston St Unit B, Manor TX 78653. I declare under penalty of perjury that the facts stated in my Ethics Complaint and attached exhibits are true and correct.

Executed in Travis County, Texas, on September 30, 2025.

/sig/

Robert Edward Battaile

15-25-001420CV

## EXHIBIT J.



**Municipal Complaint re: Abuse of Official Capacity — Phil Green (IT Director), City of Manor**

**Defendant:**

Phil Green

Information Technology Director

City of Manor, Texas

**Charge:**

Abuse of Official Capacity — Texas Penal Code §39.02 (Class C — value of denied governmental service under $100)

**Statement of Facts**

On November 17, 2025, at approximately 10:00 a.m., I was at Manor City Hall filing an Ethics Commission Complaint addressed to the City Manager, and Court Clerk Sofi Duran was notarizing my documents. At that moment, City of Manor IT Director Phil Green was walking by the interior window and, for some unknown reason, paused. I greeted him and complimented him on his shirt. I then asked whether he had had a chance to read the email I had sent earlier in the day regarding obtaining the required audio-out feed from the Council Chambers' P.A. system. He said that he had seen it.

I then asked him directly: "Can I get that audio feed?"

Mr. Green replied: "No, we don't do that in Manor."

I explained that the audio was completely unusable at the illegal, unrecorded Charter Review Commission meeting. In my email, I explained that all I was requesting was a standard, passive line-level audio-out connection — a unidirectional analog signal that

15-25-001420CV

cannot alter, interfere with, or access any network. Mr. Green nevertheless implied that connecting to an audio-out jack would amount to "tapping into the network," which is technically impossible for an audio-only output connection.

I then asked him whether he had checked with the City Attorneys about denying this request. He stated: **"No. I made the decision."**

I asked whether, in the alternative, I could bring a boom mic on a fish pole extended into the room. He said no, but sounded somewhat amenable to my using a shotgun microphone on a pole so long as it was not extended "over" the people speaking.

Mr. Green's unilateral refusal prevented me from exercising rights explicitly granted under the Texas Open Meetings Act, including the right to record open meetings by any non-disruptive method. His refusal directly prevented access to a governmental service required by law.

**Applicable Law**

**Texas Government Code §551.023**

Guarantees the public the right to record any open meeting by audio or video, provided the method is non-disruptive.

**Texas Government Code §551.021**

Requires the governmental body to create minutes or to make a recording of open meetings. The Charter Review Commission has done neither.

**Texas Penal Code §39.02 — Abuse of Official Capacity (Class C when the value of the governmental service denied is under $100).**

Mr. Green intentionally denied access to a lawful, zero-cost governmental service he was obligated to allow.

**Public Harm / Disenfranchisement**

Denying a clean audio-out feed — the least disruptive, least intrusive, and most accurate method of documenting public meetings — makes it effectively impossible for residents to obtain reliable public-meeting records. Ordinary citizens without advanced audio gear, expensive microphones, or specialized equipment are left unable to exercise the rights guaranteed under the Texas Open Meetings Act. This is especially harmful when the City chooses not to record meetings at all. Mr. Green's refusal deprives the public of meaningful access, prevents independent documentation, and obstructs transparency required by law.

**Unsworn Declaration**

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Manor, Travis County, Texas, on November 17, 2025.

_____

Robert Edward Battaile

**EXHIBIT K.**

Municipal Complaint re: Unlawful Refusal to Provide

Police Report Determination


**Manor Police Chief, Ryan Phipps** – as the head of the Manor Police Department, is responsible for all departmental policies, staff conduct, and the procedures governing public access to police records. The refusal I encountered on November 17, 2025 was presented to me by staff as a department-wide rule requiring the use of an online portal instead of allowing in-person access. If such a policy exists, it was established, approved, or allowed by Chief Phipps; and if no such policy exists, then his subordinates acted improperly under his supervision. In either case, Chief Phipps is the appropriate named party because he bears ultimate responsibility for any unlawful or obstructive practice preventing a complainant from obtaining his own report determination in person.

**Statement of Facts:**

On November 17, 2025, earlier in the day, I phoned the Manor Police Department and spoke with an employee identified as Joshua. Joshua stated that he "did not think I would be successful" obtaining a copy of my police report disposition/determination in person and advised me to use the online portal instead. He did not state any legal basis for requiring an online submission, and I informed him I intended to come in person.

At 10:53 a.m., I arrived at the Manor Police Department to obtain the report. I began an audio recording at that time. At the window, I spoke with Jaimie, who was polite but informed me that the report could only be obtained through the online portal and that they would not provide it in person. This refusal is recorded.

The Manor Police Department has historically provided these records in person upon request. Texas Government Code §552.221(a) requires governmental bodies to produce public information for inspection or duplication in their offices. No statute authorizes a police department to require an online-only process or to refuse in-person inspection. The refusal impeded my statutory right to inspect and obtain a record that I myself filed. I believe these actions constitute the intentional denial of a governmental service valued under $100 and therefore fit the definition of Abuse of Official Capacity under Texas Penal Code §39.02 (Class C when the value is minimal).

This refusal also creates a dangerous situation for any person who does not have access to a computer, internet, or the online portal. Such a resident would be completely disenfranchised from obtaining their own police records, including determinations that could affect their liberty. A person without computer access could be left unaware of pending actions, accused status, or investigative closures, and could be placed at risk of further penalties, warrants, or even jail time without the basic ability to retrieve the document in person.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Manor, Travis County, Texas, on November 17, 2025.

_____

Robert Edward Battaile

**EXHIBIT L.**

**Municipal Complaint — Abuse of Official Capacity**

Defendant: Phil Green, Information Technology Director - City of Manor, Texas

Charge:

Abuse of Official Capacity — Texas Penal Code §39.02 (Class C)

(Denial of a governmental service valued under $100)

**Statement of Facts**

At a Manor City Council meeting prior to November 20, 2025, I approached City of Manor IT Director Phil Greenand requested a standard audio-out feed from the Council Chambers public-address system.

This request was necessary because, unlike Council, P&Z, and other bodies with excellent audio/video archiving, the Charter Review Commission (CRC) does not create any audio or video recording whatsoever. There is no publicly available record of CRC proceedings. A clean independent audio source is therefore the only way for the public to document the meeting.

During that earlier Council meeting, I asked Mr. Green:

"Can I get the audio-out feed?"

Mr. Green replied: "No. We don't do that in Manor."

I then asked whether he had checked with the City Attorneys.

He responded: "No. I made the decision."

Although he denied the audio-out feed, after being asked specifically, Mr. Green told me he would allow me to bring a boom pole with a shotgun microphone, so long as it was not extended "over" the individuals speaking. This was the only method he allowed after refusing the proper, easy audio connection standard at every hotel and event center.

**Reason for Filing This Complaint**

At the November 20, 2025 CRC meeting, the audio-out feed was again unavailable, solely because Mr. Green had previously refused to provide it. Although he was not present at the CRC meeting, no audio feed had been provided, implemented, or made available after his earlier decision. As a result, I was effectively "forced" to bring a 14-foot boom pole and shotgun microphone, with heavy-duty C-stands to hold it up safely; walking through rain and requiring an assistant solely because the IT Director had denied the proper audio access.

Mr. Green's conduct at the earlier Council meeting directly caused the continued public harm and unavailability of the audio feed on November 20, preventing the public from obtaining a clear record of a meeting for which the City creates no official recording.

**Applicable Law**

Texas Government Code §551.023

Guarantees the public's right to record any open meeting by any non-disruptive means.

Texas Penal Code §39.02 — Abuse of Official Capacity (Class C)

A public servant commits an offense when he intentionally denies or withholds a

governmental service valued under $100.

Denying a lawful, free audio-out feed meets this definition.

**Public Harm**

Because the CRC produces no audio or video recording at all, withholding the audio-out feed obstructs transparency, burdening residents and preventing meaningful public oversight. The public cannot obtain a reliable record of CRC proceedings unless independent recording is supported with basic access to the meeting's audio.

**Unsworn Declaration**

My name is Robert Edward Battaile. My date of birth is August 14, 1950.

My address is 502 E Eggleston St., Unit B, Manor, TX 78653.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Manor, Travis County, Texas, on November 21, 2025.

_____

Robert Edward Battaile, Complainant

**EXHIBIT M.**

CITY OF MANOR MUNICIPAL COURT

CLASS-C MISDEMEANOR COMPLAINT

COMPLAINANT:

Robert Edward Battaile

502 E Eggleston St., Unit B

Manor, Texas 78653

DEFENDANT:

Mayor Dr. Christopher Harvey

City of Manor, Texas

STATUTE ALLEGED:

Texas Penal Code §39.02 — Abuse of Official Capacity (Class-C Level)

(Denial of a governmental service valued under $100)

STATEMENT OF FACTS

For many years, the City of Manor used a simple, lawful, and consistently applied public-participation system. A single speaker card allowed citizens to speak on Public Comment (three minutes), on each Public Hearing item (three minutes per hearing), and on each Agenda Item (three minutes per item). This system fully complied with Texas Government Code §551.007 and provided meaningful public participation on significant

governmental matters.

In late 2025, the City abruptly replaced this long-standing system with a contradictory and restrictive method that:

1.Limits a citizen to speaking on only one Agenda Item.

2.Compresses the total speaking time to five minutes if both Public Comment and an Agenda Item are selected.

3.Reduces Agenda Item time from three minutes down to two minutes.

4.Uses two conflicting speaker cards (Yellow Card for Public Comment combined with Agenda Item; White Card for Agenda Items and Public Hearings only, which excludes Public Comment).

5.Results in inconsistent enforcement based entirely on the presiding officer.

This altered system is similar to the one challenged in the Save Our Springs Alliance v. City of Austin litigation, where courts examined unreasonable restrictions on public-speaking rights.

Direct Evidence of Knowledge and Intent

At the first meeting where the new cards appeared, City Secretary Lluvia Almaraz was unsure how to apply the new system. As I filled out the card, I told her, "I don't think this is legal." At that moment, Mayor Dr. Christopher Harvey leaned down, chuckled, and said, "Yes it is, we checked with the City Attorneys." This proves the Mayor knew the system changed, knew it was legally questionable, knew staff did not understand it,

15-25-001420CV

and had previously coordinated with the City Attorneys to approve it.

Mayor Harvey is the only individual who starts, monitors, and ends speaking time. He is the sole timekeeper, and no employee other than the presiding officer controls the clock.

Additional Pattern: Mayor Pro-Tem Emily Hill

When Mayor Harvey is absent, Mayor Pro-Tem Emily Hill presides. She has struggled to apply the conflicting rules, often pausing during meetings to determine which card applies and how much time a speaker should receive. This demonstrates that the system is unclear, unreasonable, and not uniformly applied as required by Texas Government Code §551.007.

Suppression of a Separate Legal Voice: Austin Bocce League (501(c)(3))

When I attempt to speak separately as Director of the Austin Bocce League, a registered charitable corporation with its own legal identity, the City refuses to provide separate speaking time. Instead, it forces the organization's issues into my own compressed five-minute block. This denies the nonprofit's independent right to address government and further demonstrates the suppressive nature of the time-compression system.

LEGAL BASIS

Texas Government Code §551.007 guarantees the right to speak on agenda items. Time limits must be reasonable, consistent, and uniformly applied. The current system fails these requirements.

Texas Penal Code §39.02 applies when a public servant intentionally or knowingly

denies a governmental service valued under $100. Speaking time on agenda items is a statutory procedural service. Mayor Harvey knowingly denied this service by enforcing the new restrictive system.

PARTICIPANTS (NOT CHARGED)

City Secretary Lluvia Almaraz — collects speaker cards; does not run the clock.

City Attorneys (Knight Law Firm) — advised and approved the challenged system.

REQUEST FOR RECUSE OF CITY ATTORNEYS

Mayor Harvey's statement "We checked with the City Attorneys" establishes that the City Attorneys possess direct knowledge and are material witnesses. Under Texas Disciplinary Rule 3.08, they cannot ethically participate in prosecuting a case where they are necessary witnesses. Complainant requests their recusal and assignment of a neutral prosecuting authority.

PRAYER FOR RELIEF

Complainant respectfully requests that the Court:

1. Accept this Complaint under Texas Penal Code §39.02.

2. Order the City to discontinue the unlawful compressed-time, dual-card system.

3. Restore the prior lawful system providing three minutes for Public Comment, three minutes per Public Hearing, and three minutes per Agenda Item, all using one unified speaker card.

4. Require any future changes to be adopted by ordinance with public notice.

5.Recuse City Attorneys due to conflict of interest.

6.Assign a neutral prosecutor.

7.Grant any additional relief necessary to protect statutory public-speaking rights.

EXHIBITS

Exhibit A: Yellow Speaker Card — Public Comment + Agenda Items

Exhibit B: White Speaker Card — Agenda Items + Public Hearings

UNSWORN DECLARATION

(Texas Civil Practice & Remedies Code §132.001)

My name is Robert Edward Battaile.

My date of birth is August 14, 1950.

My address is 502 E Eggleston St., Unit B, Manor, Texas 78653, United States of America.

I have personal knowledge of the facts stated in this Complaint and its Exhibits. Each fact is true and correct. I declare under penalty of perjury that this Complaint is submitted in good faith and that the events described occurred exactly as stated.

Executed in Manor, Travis County, Texas, on November 21, 2025.

_____

Robert Edward Battaile, Complainant

EXHIBIT N. MONARCH RANCH. Developer's own map shows NO PARLAND.



| LAND USE PARCEL TABLE | | | |
|---|---|---|---|
| LAND USE | ACREAGE | LOTS | DENSITY |
| (SF-2) RESIDENTIAL | 101.0 ACRES | 400 LOTS | 4.0 DU/AC |
| (C-2) MEDIUM COMMERCIAL | 11.3 ACRES | 2 LOTS | |
| (OS) FLOODPLAIN | 13.6 ACRES | 1 LOTS | |
| (OS) OPEN SPACE | 8.6 ACRES | 1 LOTS | |
| TOTAL | 134.5 ACRES | | 3.0 DU/AC |

**EXHIBIT O. Appellant's final draft.**

– Filed copy available. Photos were attached.

CITY OF MANOR – MUNICIPAL COURT COMPLAINT ATTACHMENT

Abuse of Official Capacity – Class C Misdemeanor

(Texas Penal Code § 39.02(b)(1))

Complainant: Robert Edward Battaile

502 E Eggleston St., Unit B | Manor, TX 78653 | 512-662-2955 | robert@manortx.us

Defendant: Matt Woodard, Public Works Director, City of Manor

**Statement of Facts**

This complaint describes a theoretical mowing path demonstrating how City-owned equipment and labor could be misused across privately held land north of E. Lane Avenue and Murray Avenue. The modeled path runs diagonally, approximately six (6) feet wide and five hundred (500) feet long, crossing four contiguous parcels (240911, 240912, 240913, 240916) and the former alley right-of-way previously conveyed by the City to a private developer for a 95-unit townhome project.

The path covers approximately 3,000 sq ft (0.07 acre). Using conservative municipal operating costs, the total value of City resources consumed would be about $75, remaining below the $100 threshold for a Class C misdemeanor under Texas Penal Code § 39.02(b)(1).

**Itemized Valuation of City Resources**

| Item | Basis of Estimate | Value ($) |
|---|---|---|
| Operator labor (incl. benefits) | 1 hr @ $30 | $30 |
| Fuel & oil | 1 gal @ $6 | $6 |
| Equipment wear / depreciation | flat allowance | $10 |
| Vehicle transport (load/unload + 0.5 hr labor) | 0.5 hr @ $30 | $15 |
| Misc. supplies (trimmer line, fluids, etc.) | flat | $4 |
| Administrative & setup time | 10 min @ $30/hr | $5 |
| Total Estimated Value | | ≈ $70 – $75 |

**Summary and Request**

This illustration shows that even one narrow mower pass across these parcels and the former alley right-of-way could constitute misuse of government property while staying within the Class C value range. Please accept this complaint for review and investigation under Texas Penal Code § 39.02(b)(1).

Submitted by: _____ Date: _____

**Robert Edward Battaile, Complainant**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108480565
Filing Code Description: Other Brief
Filing Description: APPELLANT???S SUPPLEMENTAL LETTER BRIEF
Status as of 11/26/2025 8:26 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeffrey Hobbs | 24012837 | jhobbs@abaustin.com | 11/25/2025 10:03:36 PM | SENT |
| Michael Kabat | 24050847 | mkabat@mcginnislaw.com | 11/25/2025 10:03:36 PM | SENT |
| Joanna Salinas | 791122 | joanna.salinas@fletcherfarley.com | 11/25/2025 10:03:36 PM | SENT |
| William Davidson | 5447000 | bdavidson@chmc-law.com | 11/25/2025 10:03:36 PM | SENT |
| Gavin Villareal | 24008211 | gavin.villareal@bakerbotts.com | 11/25/2025 10:03:36 PM | SENT |
| Michael Roberts | 24082153 | mroberts@jw.com | 11/25/2025 10:03:36 PM | SENT |
| Cynthia Veidt | 24028092 | cynthia.veidt@traviscountytx.gov | 11/25/2025 10:03:36 PM | SENT |
| Stephanie Serrano | 24092655 | sserrano@rothberg.law | 11/25/2025 10:03:36 PM | SENT |
| Kevin O'Hanlon | 15235500 | kohanlon@808west.com | 11/25/2025 10:03:36 PM | SENT |
| Patrick Kelly | 11228000 | pat.kelly@traviscountytx.gov | 11/25/2025 10:03:36 PM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 11/25/2025 10:03:36 PM | SENT |
| Austin Jones | 24116579 | ajones@mcginnislaw.com | 11/25/2025 10:03:36 PM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 11/25/2025 10:03:36 PM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 11/25/2025 10:03:36 PM | SENT |
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 11/25/2025 10:03:36 PM | SENT |
| Lauren Bush | 24142742 | lbush@jw.com | 11/25/2025 10:03:36 PM | SENT |
| Anna Puff | 24144206 | gtwnfilings@sneedvine.com | 11/25/2025 10:03:36 PM | SENT |
| Edward Smith | 24037790 | esmith@808west.com | 11/25/2025 10:03:36 PM | SENT |
| Robert EdwardBattaile | | robert@manortx.us | 11/25/2025 10:03:36 PM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 11/25/2025 10:03:36 PM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 11/25/2025 10:03:36 PM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 11/25/2025 10:03:36 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108480565
Filing Code Description: Other Brief
Filing Description: APPELLANT???S SUPPLEMENTAL LETTER BRIEF
Status as of 11/26/2025 8:26 AM CST

Case Contacts

| Raylynn Howell | | raylynn.howell@bakerbotts.com | 11/25/2025 10:03:36 PM | SENT |
|---|---|---|---|---|
| Kim McBride | | kmcbride@mcginnislaw.com | 11/25/2025 10:03:36 PM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 11/25/2025 10:03:36 PM | SENT |
| Sneed Vine &Perry | | gtwnfilings@sneedvine.com | 11/25/2025 10:03:36 PM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 11/25/2025 10:03:36 PM | SENT |
| Andy Soule | | asoule@rrspllc.com | 11/25/2025 10:03:36 PM | SENT |
| Karah Powers | | kpowers@chmc-law.com | 11/25/2025 10:03:36 PM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 11/25/2025 10:03:36 PM | SENT |
| Benjamin C. Hunt | | ben.hunt@bakerbotts.com | 11/25/2025 10:03:36 PM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 11/25/2025 10:03:36 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 11/25/2025 10:03:36 PM | SENT |
| Carol Shipley | | cshipley@rrspllc.com | 11/25/2025 10:03:36 PM | SENT |
| Emily Hill | | ehill@manortx.gov | 11/25/2025 10:03:36 PM | SENT |
| Anne Weir | | aweir@manortx.gov | 11/25/2025 10:03:36 PM | SENT |
| Legal Counsel | | info@dalfen.com | 11/25/2025 10:03:36 PM | SENT |
| W Fusselman | | wfusselman@txamfoundation.com | 11/25/2025 10:03:36 PM | SENT |